# EXHIBIT A

1  Craig Solomon Ganz (SBN 023650)
2  Michael A. DiGiacomo (SBN 032251)
   Ballard Spahr LLP
3  1 East Washington Street, Suite 2300
   Phoenix, AZ 85004-2555
4  E-mail: ganzc@ballardspahr.com
5  E-mail:digiacomom@ballardspahr.com
   Telephone: 602.798.5400
6  Facsimile: 602.798.5595
7  *Attorneys for Plaintiffs*



8              IN THE SUPERIOR COURT OF THE STATE OF ARIZONA

9                 IN AND FOR THE COUNTY OF MARICOPA

10

11  CHAD LANDAU, an individual and on      NO.  CV 2018-007262
    behalf of BRIDGE ENTERTAINMENT,
12  LLC, an Arizona limited liability company;
    BKN INVESTMENTS, LLC, an Arizona       **VERIFIED COMPLAINT FOR (I)**
13  limited liability company; BKN REAL     **BREACH OF CONTRACT; (II)**
    ESTATE, LLC, an Arizona limited liability **BREACH OF FIDUCIARY DUTY;**
14  company; CS CHANDLER REAL              **(III) COMMON LAW FRAUD; (IV)**
15  ESTATE, LLC, an Arizona limited liability **SCHEME OR ARTIFICE TO**
    company; DIEGO POPS, LLC, an Arizona   **DEFRAUD; (V)**
16  limited liability company; DIEGO POPS   **RACKETEERING/CIVIL RICO**
17  HOLDINGS, LLC, an Arizona limited
    liability company; and SCOTTSDALE
18  ROAD RESTAURANT, LLC, an Arizona
19  limited liability company; JOHN MOON,
    an individual; EDUARDO ESCOBAR, an
20  individual; D2W, LLC, an Arizona limited
21  liability company; KAREN DORIS, LLC,
    an Arizona limited liability company,
22
23            Plaintiffs,
24            vs.
25  RYAN and CAITLIN JOCQUE, husband
26  and wife,
27            Defendants.
28

DMWEST #17696849 v7

1  For their Complaint against the above-named defendants, Plaintiffs Chad Landau;
2  John Moon; Eduardo Escobar; D2W, LLC; Karen Doris, LLC, formerly known as
3  Landau Holcomb Holdings, LLC; and on behalf of Bridge Entertainment, LLC; BKN
4  Real Estate, LLC; BKN Investments, LLC; CS Chandler Real Estate, LLC; Diego Pops,
5  LLC; Diego Pops Holdings, LLC; and Scottsdale Road Restaurant, LLC (collectively, the
6  "Plaintiffs") allege as follows:

7  **I.    PARTIES, VENUE, AND JURISDICTION**

8      1.    Plaintiff Chad Landau ("Landau") is an individual residing in Maricopa
9  County, Arizona.

10      2.    Plaintiff John Moon ("Moon") is an individual residing in Maricopa
11  County, Arizona.

12      3.    Plaintiff Eduardo Escobar ("Escobar") is an individual residing in the state
13  of Texas.

14      4.    Plaintiff D2W, LLC ("D2W") is an Arizona limited liability company, with
15  its principal place of business in Maricopa County, Arizona.

16      5.    Plaintiff Karen Doris, LLC, formerly known as Landau Holcomb Holdings,
17  LLC ("KD, LLC") is an Arizona limited liability company, with its principal place of
18  business in Maricopa County, Arizona.

19      6.    Bridge Entertainment, LLC ("Bridge Entertainment") is an Arizona limited
20  liability company, with its principal place of business in Maricopa County, Arizona.

21      7.    BKN Investments, LLC ("BKN Investments") is an Arizona limited
22  liability company, with its principal place of business in Maricopa County, Arizona.

23      8.    BKN Real Estate, LLC ("BKN Real Estate") is an Arizona limited liability
24  company, with its principal place of business in Maricopa County, Arizona.

25      9.    Diego Pops, LLC is an Arizona limited liability company, with its principal
26  place of business in Maricopa County, Arizona.

27      10.   Diego Pops Holdings, LLC ("DP Holdings") is an Arizona limited liability
28  company, with its principal place of business in Maricopa County, Arizona.

Ballard Spahr LLP
1 East Washington Street, Suite 2300
Phoenix, AZ 85004-2555
Telephone: 602.798.5400

2

Ballard Spahr LLP
1 East Washington Street, Suite 2300
Phoenix, AZ 85004-2555
Telephone: 602.798.5400

1      11.    CS Chandler Real Estate, LLC ("CSCRE") is an Arizona limited liability

2 company, with its principal place of business in Maricopa County, Arizona.

3      12.    Scottsdale Road Restaurant, LLC ("SRR" and along with, Bridge

4 Entertainment, BKN Investments, BKN Real Estate, CSCRE, Diego Pops, LLC, and DP

5 Holdings, the "Business Entities") is an Arizona limited liability company, with its

6 principal place of business in Maricopa County, Arizona.

7      13.    Defendant Ryan Jocque ("Jocque") is an individual residing in Maricopa

8 County, Arizona.

9      14.    Defendant Caitlyn Jocque ("Mrs. Jocque") is an individual residing in

10 Maricopa County, Arizona.

11      15.    At all times Defendants caused actions to occur in Maricopa County,

12 Arizona out of which these claims arise.

13      16.    Venue is proper in this Court pursuant to A.R.S. § 12-401.

14      17.    The named Plaintiffs bring this action on behalf of the Business Entities, as

15 named above, pursuant to A.R.S. § 29-831.

16      18.    Pursuant to A.R.S. § 29-831, Plaintiffs made demand upon Jocque, as

17 manager of the Business Entities, and other non-Plaintiff managers of the Business

18 Entities, on April 25, 2018 (the "Derivative Demand") demanding that legal action be

19 initiated against Jocque for the acts and omissions described herein. To date, neither

20 Jocque nor any other manager has responded to the Derivative Demand or initiated any

21 legal action against Jocque.

22      19.    At all times relevant to the allegations stated herein, Landau, Escobar,

23 D2W, and KD, LLC were members of some or all of the Business Entities.

24      20.    Landau, Escobar, D2W, and KD, LLC fairly and adequately represent the

25 interests of the Business Entities' members.

26 **II.**    **OWNERSHIP/MANAGEMENT INTERESTS**

27      21.    Bridge Entertainment is owned by Jocque (37.5%); William Asher

28 (27.5%); KD, LLC (5%); D2W (7.5%) and other miscellaneous owners (22.5%). Prior to

3

the buyout resulting from Jocque's fraudulent misrepresentation to Moon, Bridge Entertainment was owned by Moon (25%); Jocque (25%); William Asher (15%); KD, LLC (5%); D2W (7.5%) and other miscellaneous owners (22.5%).

22. BKN Investments is owned by Jocque (50%) and KD, LLC (50%).

23. BKN Real Estate is owned by Jocque (50%) and KD, LLC (50%).

24. CSCRE is owned by BKN Real Estate, LLC (50%) and Jocque (50%). But for the fraudulent misrepresentations that Jocque made to Moon regarding the effect of Moon's investment in CSCRE, Moon and Landau would both hold 20% ownership interests in CSCRE.

25. BKN Management, LLC is owned by Jocque (65.55%); JTMC, LLC (23.33%); Landau BKN Holdings, LLC (5.56%); and Brooks Holcomb (5.56%).

26. Diego Pops, LLC is owned by Jocque (70%); KD, LLC (8%); Ray Olivea (8%); D2W (7.5%); Escobar (3%); Marcia Bower (2.5%); and Micamp Holdings, LLC (1%). Prior to the buyout resulting from Jocque's fraudulent misrepresentation to Moon, Diego Pops, LLC was owned by Moon (35%); Jocque (35%); KD, LLC (8%); Ray Olivea (8%); D2W (7.5%); Escobar (3%); Marcia Bower (2.5%); and Micamp Holdings, LLC (1%).

27. DP Holdings is owned by BKN Investments.

28. SRR is owned by Jocque (50%) and BKN Real Estate (50%).

III. **GENERAL ALLEGATIONS**

29. At all times, Jocque operated the Business Entities as if they were his own personal bank accounts and with complete disregard to the various investors.

30. Jocque committed tax fraud by intentionally misrepresenting capital contributions by sham members of the Business Entities.

31. Jocque committed tax fraud by intentionally listing fictitious debts on the tax returns for the Business Entities.

32. Jocque consistently, and without authorization or consent, moved members' equity interests in certain of the Business Entities into related entities for no consideration

Ballard Spahr LLP
1 East Washington Street, Suite 2300
Phoenix, AZ 85004-2555
Telephone: 602.798.5400

4

and to the detriment of the Plaintiffs.

33.     Jocque grossly inflated construction costs in effort to create the appearance of a need for additional capital thus preserving a larger equity stake in the Business Entities for himself.

34.     When other managers, including Landau, would attempt to obtain access to financial records for the Business Entities, Jocque would instruct banking institutions to block these attempts.

35.     Prior to filing this lawsuit, Plaintiffs, including Landau on behalf of the Business Entities, made a demand for books and records consistent with the relevant operating agreements.

36.     Jocque, as manager of the Business Entities, responded to the record request by refusing to allow for inspection of books and records at the Business Entities' regular place of business, as provided in the Business Entities' operating agreements.

37.     Instead, Jocque emailed counsel for the Plaintiffs and explained that Norma Black, formerly known as Norma Dinh, would deliver a fraction of the documents requested by the Plaintiffs to their counsel.

38.     Jocque, as a manager of the Business Entities actively attempted to freeze out Landau, a manager of certain of the Business Entities, in an effort to prevent Landau from discovering Jocque's elaborate fraudulent scheme.

39.     Jocque used Lucid Entertainment, an unrelated entity with full access to the Business Entities' books and records, in furtherance of his scheme to defraud investors.

40.     Jocque would systematically, and fraudulently, remove funds from the Business Entities, for his own personal benefit and expenses to the detriment of the Business Entities and investors, including the Plaintiffs set forth in the Complaint.

41.     Jocque would funnel assets, and provide preferred distributions, from the Business Entities to family members and friends in an effort to further his personal gains to the detriment of the Business Entities and investors, including the Plaintiffs set forth in the Complaint.

Ballard Spahr LLP
1 East Washington Street, Suite 2300
Phoenix, AZ 85004-2555
Telephone: 602.798.5400

5

42. Jocque instructed key employees that reported directly to him to conduct fraudulent activity relating to payroll to the detriment of the Business Entities and investors including the Plaintiffs set forth in the Complaint.

43. Specifically, Jocque created an elaborate payroll scheme to siphon funds from the Business Entities, to the detriment of the Business Entities and investors including the Plaintiffs set forth in the Complaint.

44. In furtherance of his fraudulent payroll scheme, Jocque instructed employees reporting directly to Jocque to issue and cash payroll checks to phantom employees including through an entity called Yakup, LLC.

45. The accounts for Yakup, LLC were eventually terminated by Chase Bank for suspicious activity.

46. Jocque instructed key employees that reported directly to him, including Norma Black, to conduct fraudulent activity relating to accounts payable and accounts receivable, to the detriment of the Business Entities and investors including the Plaintiffs set forth in the Complaint.

47. Jocque instructed key employees that reported directly to him, including Norma Black, to deny Landau access to the Business Entities' accounts, books, and records in an attempt to prevent Landau from complying with his duties as a manager of the Business Entities.

48. Jocque established numerous intercompany loans saddling non-related entities with debt from which the Business Entities received no benefit to the detriment of investors, including the Plaintiffs set forth in the Complaint.

49. Jocque opened and closed various bank accounts at numerous banks in the names of the Business Entities without the consent of Landau, a manager of many of Business Entities, and without formally disclosing these bank accounts on company books and records.

50. Jocque personally controlled and manipulated the expenses on various build outs, creating a scheme where contractors hired by him individually either received

Ballard Spahr LLP
1 East Washington Street, Suite 2300
Phoenix, AZ 85004-2555
Telephone: 602.798.5400

6

outlandish and overstated amounts for work performed, or were reported to receive greater amounts for work performed than they actually received.

51.     In certain instances, checks were issued for contractors and vendors that never performed work for the benefit of the Business Entities.

52.     In certain instances, checks were issued for "consulting" work that was never performed.

53.     Jocque, along with Co-Defendant Mrs. Jocque, misappropriated funds, including through the use of ACH and electronic deposit transfers, from various businesses for his own personal use.

54.     Jocque, along with Mrs. Jocque misappropriated funds from the Business Entities and used these entity funds as reimbursements for home furnishings, including thousands of dollars' worth of Voluspa candles, and other non-business related expenses.

55.     Jocque engaged in fraud and self-dealing when issuing equity in the Business Entities.

56.     Jocque caused equity to be issued in Business Entities for little or no consideration to the detriment of the Business Entities and investors, including the Plaintiffs set forth in the Complaint.

57.     Jocque took many actions including the issuance of debt and equity without formally complying with the operating agreements that controlled the Business Entities.

58.     Jocque engaged in an elaborate scheme spanning numerous years to carefully craft and disguise his fraudulent activities as set forth in further detail below.

**History of the Relationship Between Jocque and Landau**

59.     Landau formed a restaurant concept called the Original Chop Shop Co., LLC ("OCS") in 2012.

60.     After securing OCS's first location, Landau recruited Jocque's involvement and leadership in the expansion of OCS to other locations and the eventual sale of the company to a private equity group called Hargett Hunter in 2016 (the "OCS Sale").

61.     Any claims or actions relating to the OCS Sale are currently being

Ballard Spahr LLP
1 East Washington Street, Suite 2300
Phoenix, AZ 85004-2555
Telephone: 602.798.5400

7

investigated and arise out of a separate transaction and occurrence and are not the subject matter of this Complaint.

## Formation of BKN Real Estate, LLC

62. BKN Real Estate formed on October 15, 2013. BKN Real Estate's members executed an operating agreement (the "BKN Real Estate Operating Agreement") on or about March 1, 2014. A true and correct copy of the BKN Real Estate Operating Agreement is attached hereto as **Exhibit A.**

63. BKN Real Estate held rights of first refusal to purchase certain properties associated with OCS locations.

64. Specifically, BKN Real Estate held a right of first refusal to purchase property located at 7158 East 5th Avenue, Scottsdale, Arizona.

65. Jocque, without the consent of Landau, a manager of BKN Real Estate, signed away BKN Real Estate's right of first refusal to purchase the property located at 7158 East 5th Avenue, Scottsdale, Arizona.

66. On information and belief, after signing away BKN Real Estate's right of first refusal to purchase 7158 East 5th Avenue, Scottsdale, Arizona, Jocque engaged in a scheme to purchase the same property for himself to the detriment of BKN Real Estate and Landau, BKN Real Estate's other member.

## CSCRE's Purchase of the Chandler Building

67. CSCRE formed on June 28, 2013 for the purpose of purchasing a piece of commercial real estate in Chandler, Arizona to house the third OCS location.

68. CSCRE's members executed an operating agreement (the "CSCRE Operating Agreement") on or about March 1, 2014. A true and correct copy of the CSCRE Operating Agreement is attached hereto as **Exhibit B**.

69. The CSCRE Operating Agreement lists CSCRE's managers as Jocque and Landau [Ex. B, at Article 2.30] and states that "the consent of two (2) Managers shall be sufficient to make any and all decisions and to do any and all things which the Managers deem to be reasonably required to accomplish the business and objectives of the

Ballard Spahr LLP
1 East Washington Street, Suite 2300
Phoenix, AZ 85004-2555
Telephone: 602.798.5400

8

company." *Id.* at Article 5.1.

70.     Soon after the execution of the CSCRE Operating Agreement, Jocque proposed that CSCRE purchase a building located at 35 W. Boston St, Chandler, Arizona 85225 (the "Chandler Building").

71.     After being solicited for an investment, Moon contributed $370,000 to CSCRE in August of 2013.

72.     Moon intended his contribution of $370,000 as a capital contribution and was informed by Jocque that Moon would receive a 40% interest in CSCRE.

73.     Moon, Jocque, and Landau agreed that the 40% interest Moon purchased would be split 20% going to Moon and 20% going to Landau, with Landau receiving a 20% interest in CSCRE and the Chandler Building in exchange for bringing in Moon's $370,000 investment.

74.     Moon's $370,000 was placed into escrow on August 16, 2013 and was used to fund CSCRE's purchase of the Chandler Building. After CSCRE's purchase of the Chandler Building, and after doubling the value of the Chandler Building through the opening of an OCS location, Jocque told Moon in October of 2014 that Moon did not own any equity in CSCRE or the Chandler Building and that the $370,000 Moon paid to CSCRE was a "loan" that would be repaid.

75.     CSCRE, at Jocque's direction, repaid Moon $100,000 of his $370,000 capital contribution to CSCRE in 2014.

76.     At Jocque's sole direction, Diego Pops, LLC repaid Moon an additional $55,000 of his capital contribution to CSCRE in July of 2014.

77.     Diego Pops, LLC had no interest in CSCRE and the payment from Diego Pops, LLC to Moon is an example of Jocque unilaterally using funds from one entity to pay the debt of another non-related entity, all to the detriment of its investors, including the Plaintiffs set forth in the Complaint.

78.     On December 31, 2016, Jocque altered, or instructed Norma Black to alter the entry on CSCRE's QuickBooks regarding the $55,000 loan originally due to Diego

Ballard Spahr LLP
1 East Washington Street, Suite 2300
Phoenix, AZ 85004-2555
Telephone: 602.798.5400

9

Pops, LLC from CSCRE and documented the $55,000 transfer as a loan owed from BKN Management, LLC to Diego Pops, LLC.

79. On information and belief, BKN Management, LLC received no value from the $55,000 loan.

80. Jocque's actions were unauthorized by Landau and represent an example of Jocque's breach of the CSCRE Operating Agreement and fraud.

81. On information and belief, the $55,000 owed to Diego Pops, LLC by either CSCRE or BKN Management, LLC has not been repaid.

82. In late 2014, Jocque then solicited a loan of $200,000 from Moon, which Jocque stated would be used to purchase a parking lot located next to OCS's 216 E. University location, and an investment of $315,000.

83. Jocque represented to Moon that in exchange for the $200,000 loan and the $315,000 investment, Moon would receive (1) return of the $370,000 "loan" he contributed to CSCRE at 10% interest; (2) a 35% interest in Diego Pops, LLC; and (3) a 25% interest in Bridge Entertainment.

84. Jocque later informed Moon that Jocque was unable to purchase the parking lot adjacent to OCS's 216 E. University location and returned Moon's $200,000 loan four months later with no interest.

85. However, on information and belief, Jocque effected the purchase of the parking lot adjacent to OCS's 216 E. University location in a separate transaction that he hid from the members of the Business Entities.

86. On information and belief, Jocque contributed $0 to CSCRE and has received at least $65,000 in payments from CSCRE.

87. On information and belief, Jocque concealed many of his fraudulent or self-interested transactions related to CSCRE through his use of various undisclosed bank accounts opened on behalf of CSCRE at numerous banking institutions.

88. As one example, Jocque opened accounts in CSCRE's name at First Bank and Bank of America, which were not disclosed to CSCRE's members or managers, or

Ballard Spahr LLP
1 East Washington Street, Suite 2300
Phoenix, AZ 85004-2555
Telephone: 602.798.5400

10

listed on the company's books and records.

89. On information and belief, these accounts contain more than $200,000 in undisclosed funds.

### Formation of Bridge Entertainment, LLC.

90. Bridge Entertainment formed on or about January 2, 2014.

91. On or about October 1, 2015, Bridge Entertainment's members partially executed an operating agreement (the "Bridge Operating Agreement").

92. Although Jocque submitted a fully executed operating agreement for Bridge Entertainment in connection with applications for a liquor license and building permits, he has refused to provide a copy of a fully executed agreement to Bridge Entertainment's members.

93. A true and correct copy of the Bridge Operating Agreement is attached hereto as **Exhibit C**.

94. The Bridge Operating Agreement lists Bridge Entertainment's managers as BKN Investments, LLC and non-party William Asher ("Asher"). *Id.* at Article 2.30. BKN Investments, LLC's managers are Jocque and Landau.

95. Other than the allegations against Jocque set forth in this Complaint, at all times the managers operated consistent with terms set forth in the Bridge Operating Agreement.

96. Article 1.3 of the Bridge Operating Agreement states that Bridge Entertainment formed for the purpose of "hold[ing] and manag[ing] a restaurant located at 4360 N. Scottsdale Road, Scottsdale, Arizona 85251."

97. Prior to the formation of Bridge Entertainment, Jocque represented to Landau that BKN Investments would own a controlling interest in Bridge Entertainment.

98. Based on this representation, Landau raised capital on behalf of BKN Investments to purchase this controlling interest.

99. After the formation of Bridge Entertainment, Jocque unilaterally reduced BKN Investments' interest in Bridge Entertainment from 70% to 0%.

Ballard Spahr LLP
1 East Washington Street, Suite 2300
Phoenix, AZ 85004-2555
Telephone: 602.798.5400

11

**Bridge Entertainment's Acquisition of The Bungalow**

100. Sondra Portney, an attorney at Rapp PLLC and her boyfriend Dan Arnt contacted Jocque about the potential sale of Bungalow Bar & Grill (the "Bungalow"), a restaurant located at 4360 N. Scottsdale Road, Scottsdale, Arizona 85251.

101. Dan Arnt's business partner, Keith Francis Burns, had a close relationship with Jocque and helped broker the deal.

102. Keith Francis Burns told Jocque that the purchase of The Bungalow would need to be a quick "turn & burn" project with minimal capital contributed due to a short lease associated with The Bungalow.

103. In connection with his representations regarding the build out and opening of the Montauk, and as noted above, Jocque promised Moon that if Moon were to invest $315,000 into Diego Pops, LLC and agree to accept repayment of his $370,000 capital contribution to CSCRE, that Moon would receive 25% of Bridge Entertainment.

104. Jocque promised Moon that he and Moon would be equal partners, the businesses would open with no debt, and that they would each pay an equal amount of money to get the project opened.

105. Each of these promises was false.

106. Jocque represented to the other members of Bridge Entertainment that The Bungalow was owned by Claude Briggs and Richard Clark, a member of Bungalow Bar & Grill, LLC, and that a $400,000 note would be required to purchase The Bungalow.

107. On information and belief, Jocque structured the purchase of The Bungalow to include a $400,000 carry back loan from the previous owners, Claude Briggs and Richard Clark, which was a non-recourse loan after $215,000 was repaid.

108. On information and belief, as the $215,000 has been paid to Claude Briggs and Richard Clark, and as Claude Briggs and Richard Clark have no recourse against Bridge Entertainment for the outstanding $185,000, Jocque has been directing checks payable to Bungalow Bar & Grill, LLC on account of the $400,000 carry back loan to undisclosed accounts that are owned or controlled by Jocque.

Ballard Spahr LLP
1 East Washington Street, Suite 2300
Phoenix, AZ 85004-2555
Telephone: 602.798.5400

12

Ballard Spahr LLP
1 East Washington Street, Suite 2300
Phoenix, AZ 85004-2555
Telephone: 602.798.5400

109. Jocque did not disclose that he has been receiving funds from Bridge Entertainment related to the purchase of The Bungalow.

110. Bridge Entertainment's QuickBooks, over which Jocque exerts complete control through George Flores of Lucid Entertainment and Norma Black, indicate that payments are still being made to Bungalow Bar & Grill, LLC.

111. On information and belief, Jocque's actions with regard to the purchase of The Bungalow, and the scheme to funnel funds allegedly due to Bungalow Bar & Grill, LLC damaged Bridge Entertainment and its members in an amount in excess of $150,000.

**Bridge Entertainment's Build Out and Opening of The Montauk**

112. After Bridge Entertainment's purchase of The Bungalow, Jocque secretly and exclusively oversaw the build out and minimal conversion of The Bungalow into The Montauk (the "Montauk Build Out").

113. Jocque intentionally opened The Montauk in 2015, a new calendar year, and made it appear that although Bridge Entertainment's investors made contributions in 2014, they did not technically have financial rights to the monies made in 2014 because the restaurant operated as Bungalow Bar & Grill in 2014 rather than The Montauk.

114. Jocque caused Bridge Entertainment to issue knowingly inaccurate 2014 Form K1s to its members.

115. To complete the Montauk Build Out, Jocque unilaterally hired and oversaw the construction performed by URI Construction.

116. On information and belief, URI Construction was not approved by the City of Scottsdale as the general contractor for the project.

117. On information and belief Jocque falsely represented to the City of Scottsdale that the entire remodel was a "lipstick remodel" with no plans needed to complete non-structural changes.

118. Jocque then represented to Bridge Entertainment's members that the "lipstick remodel" of the Montauk Build Out would cost $700,000.

13

Ballard Spahr LLP
1 East Washington Street, Suite 2300
Phoenix, AZ 85004-2555
Telephone: 602.798.5400

119. On information and belief, Jocque intentionally overstated the cost necessary to complete the Montauk Build Out by more than $400,000.

120. The Bungalow reopened as The Montauk on Feb 1, 2015.

121. According to books and records, Bridge Entertainment spent more than $300,000 on the Montauk Build Out *after* February 1, 2015 when the work was already completed and the restaurant was fully operational.

122. On information and belief, Jocque concealed his misrepresentations regarding the cost necessary to complete the Montauk Build Out by documenting significant payments to URI Construction while causing Bridge Entertainment to pay URI Construction approximately $197,000.

123. On information and belief, in addition to the payments Jocque caused to be made by Bridge Entertainment to URI Construction, Jocque unilaterally, and in direct violation of the operating agreement, granted URI Investments, Inc., a company that contributed no capital or services to Bridge Entertainment, a significant 9.5% ownership interest in Bridge Entertainment in exchange for cancellation of a fictitious $150,000 debt allegedly owed to URI Construction related to the Montauk Build Out.

124. URI Investments, Inc. became, without any actual funds invested, one of the largest members of Bridge Entertainment, without any consideration, any valuation, and to the detriment of Bridge Entertainment and the other members in violation of the Bridge Operating Agreement.

125. On information and belief, URI Construction did not perform sufficient work on the Montauk Build Out to warrant both payment of approximately $197,000 and a debt sufficient to support issuance of a 9.5% ownership interest in Bridge Entertainment to URI Investments, Inc.

126. Jocque improperly granted the 9.5% ownership interest in Bridge Entertainment to URI Investments, Inc. in exchange for no reasonably equivalent value.

127. As stated, Jocque did not value these points in Bridge Entertainment's books and records, however URI Investments, according to Bridge Entertainment's

14

Ballard Spahr LLP
1 East Washington Street, Suite 2300
Phoenix, AZ 85004-2555
Telephone: 602.798.5400

1 QuickBooks, received $13,918.64 in distributions between April and December 2017.

2     128. Jocque unilaterally caused Bridge Entertainment to make payments to
3 Unique Restaurant Concepts, LLC, a company that is owned by URI Construction and
4 that, on information and belief, performed no work for Bridge Entertainment.

5     129. On information and belief Jocque caused Bridge Entertainment to make
6 these payments to Unique Restaurant Concepts, LLC on account of work performed at
7 Jocque's home including installation of a wine room, a liquor cabinet, and tiling around a
8 fireplace.

9     130. After the Montauk opened in February 2015, Jocque fraudulently
10 authorized Moore Marketing and Design ("Moore") to be paid by Bridge Entertainment
11 for work that was never performed.

12     131. According to the QuickBooks records maintained exclusively by Jocque,
13 Moore was paid approximately $100,000 between March 2015 and January 2016 to the
14 detriment of legitimate investors in Bridge Entertainment.

15     132. At one point, the QuickBooks records maintained by Jocque show that as of
16 July of 2015, Moore was overpaid by $37,833.35 to the detriment of the legitimate
17 investors in Bridge Entertainment.

18     133. On information and belief there are additional vendors to which Jocque
19 caused Bridge Entertainment to make payments on account of work performed not for
20 Bridge Entertainment, but rather for Jocque personally, such as for the cost of remodeling
21 Jocque's personal residence.

22     **Further Fraudulent Activity Related to Bridge Entertainment**

23     134. On information and belief, Jocque further misappropriated Bridge
24 Entertainment funds by charging Bridge Entertainment for construction and
25 improvements completed on CSCRE's Chandler Building.

26     135. Bridge Entertainment and CSCRE's Chandler Building are held in two
27 separate and distinct entities with different members.

28     136. On information and belief, Jocque did not properly document in Bridge

15

Ballard Spahr LLP
1 East Washington Street, Suite 2300
Phoenix, AZ 85004-2555
Telephone: 602.798.5400

1  Entertainment's books and records the amount he caused Bridge Entertainment to pay to

2  CSCRE for improvements completed on the Chandler Building.

3      137.   On information and belief, Jocque, unilaterally and without the

4  authorization of any other manager, recharacterized his capital contributions to Bridge

5  Entertainment into debt.

6      138.   Bridge Entertainment's QuickBooks indicate that Jocque made a capital

7  contribution of only $25,000 in January of 2014.

8      139.   The QuickBooks further indicate that Jocque unilaterally reclassified his

9  $25,000 capital contribution into debt in October of 2016.

10      140.   Jocque then repaid himself $25,000 for this recharacterized debt.

11      141.   This recharacterization left Jocque with a 0% interest in Bridge

12  Entertainment, yet he still paid himself distributions, on account of equity interests, in the

13  amount of $54,942 in 2017—Jocque paid himself $37,500 on April 10, 2017; $8,721 on

14  October 17, 2017; and $8,721 on December 29, 2017.

15      142.   Similarly, Jocque issued Asher a 15% ownership interest in Bridge

16  entertainment in exchange for $40,000.

17      143.   Jocque then converted Asher's $40,000 capital contribution into debt, again

18  without authorization and for no apparent benefit to Bridge Entertainment, in October of

19  2016.

20      144.   Jocque then repaid Asher $40,000 for this recharacterized debt.

21      145.   This recharacterization, and the subsequent repayment, left Asher with a

22  0% interest in Bridge Entertainment, yet he was still paid distributions, on account of

23  equity interest, in the amount of $40,290.80—Asher received $27,500 on April 10, 2017;

24  $6,395.40 on October 18, 2017; and $6,395.40 on December 29, 2017.

25      146.   On information and belief, in July of 2016, Jocque fraudulently caused

26  Bridge Entertainment to assume liability of an $87,500 loan Jocque made to BKN

27  Management, LLC.

28      147.   This transaction, substituting Bridge Entertainment in for BKN

Ballard Spahr LLP
1 East Washington Street, Suite 2300
Phoenix, AZ 85004-2555
Telephone: 602.798.5400

1  Management, LLC as the entity liable to repay Jocque, saddled Bridge Entertainment

2  with debt of $87,500 in exchange for no value or benefit to Bridge Entertainment.

3      148.  Jocque perpetrated this fraudulent scheme while legitimate investors

4  contributed actual funds to Bridge Entertainment and received no distribution until 2017,

5  when they were paid a fraction of what Jocque directed to Asher, himself, and other

6  preferred members.

7      149.  Plaintiff, D2W invested $82,000 in Bridge Entertainment and received no

8  distribution until 2017, when it was paid a meager $9,000.

9      150.  On information and belief, Jocque concealed many of his fraudulent or self-

10  interested transactions related to Bridge Entertainment through his use of various

11  undisclosed bank accounts opened on behalf of Bridge Entertainment at numerous

12  banking institutions.

13      151.  On information and belief, Jocque causes Bridge Entertainment to make

14  payments to fictitious vendors and directs the funds from Bridge Entertainment to

15  accounts owned or controlled by Jocque.

16      152.  Jocque indicated on Bridge Entertainment's general ledger that his mother,

17  Marcia Bower, made a loan to Bridge Entertainment in the amount of $100,000.

18      153.  On information and belief, the $100,000 allegedly loaned to Bridge

19  Entertainment by Marcia Bower was actually a capital contribution made by an unknown

20  entity, but was not documented as such on Bridge Entertainment's books and records.

21      154.  On information and belief, Jocque caused Bridge Entertainment to repay

22  the alleged $100,000 loan to Marcia Bower while making no change to the capital

23  account structure to reflect repayment of a capital contribution.

24      155.  The tax documents for certain of Bridge Entertainment's members do not

25  reflect the capital contributions as listed in Bridge Entertainment's QuickBooks, over

26  which Jocque exerts complete control through Norma Black.

27      156.  On information and belief, Jocque engaged in a fraudulent payroll scheme

28  that included:

17

Ballard Spahr LLP
1 East Washington Street, Suite 2300
Phoenix, AZ 85004-2555
Telephone: 602.798.5400

a. Generating fraudulent time entries for phantom employees that were not actually employed by Bridge Entertainment;

b. Causing checks to be issued to phantom employees that were not actually employed by Bridge Entertainment;

c. Personally collecting the payments made to phantom employees that were not actually employed by Bridge Entertainment; and

d. Hiring and making payments to employees that lacked the legal ability to work in the United States;

157. On information and belief, Jocque used Cake Walk Management, LLC, a management company with no ownership interest in the Business Entities, to siphon funds from Bridge Entertainment by documenting personal expenses paid by Cake Walk Management, LLC as loans to Bridge Entertainment, which Jocque then repaid to the detriment of Bridge Entertainment and its members.

158. Further, on information and belief, Jocque instructed key employees to charge Cake Walk Management, LLC's American Express card for Jocque and Mrs. Jocque's personal expenses, documenting those transactions as loans to Bridge Entertainment from Cake Walk Management and causing Bridge Entertainment to repay Cake Walk Management, LLC these amounts to the detriment of Bridge Entertainment and its members.

159. Further, on information and belief, Jocque accepted $200,000 in cash from Moore Marketing and Design which Jocque never deposited into Bridge Entertainment's accounts or documented on Bridge Entertainment's books and records.

160. Despite Bridge Entertainment generating revenues in excess of $10 million since it began operating in 2014, according the QuickBooks controlled by Jocque, Bridge Entertainment has paid its legitimate investors only $175,000—a measly 2.1% of the total top-line revenue.

**Formation of Diego Pops, LLC**

161. Diego Pops, LLC formed on or about December 18, 2013.

18

162. The members of Diego Pops, LLC executed an operating agreement (the "Diego Pops Operating Agreement") on or about March 1, 2014. A true and correct copy of the Diego Pops Operating Agreement is attached hereto as **Exhibit D**.

163. Article 2.30 of the Diego Pops Operating Agreement lists Diego Pops, LLC's managers as Jocque and Landau.

164. Diego Pops, LLC owns and operates a restaurant, Diego Pops, at 4338 N. Scottsdale Rd, Scottsdale, AZ 85251.

165. Diego Pops, LLC leases the space where it operates Diego Pops at a below market rent from SRR.

166. Pursuant to the Diego Pops Operating Agreement, "the consent of two (2) Managers shall be sufficient to make any and all decisions and to do any and all things which the Managers deem to be reasonably required to accomplish the business and objectives of the company." Diego Pops Operating Agreement, Article 5.1.

167. Prior to the formation of Diego Pops, LLC, Jocque represented to Landau that BKN Investments would own a controlling interest in Diego Pops, LLC.

168. Based on this representation, Landau raised capital on behalf of BKN Investments to purchase this controlling interest.

169. Jocque further represented that, based on capital raised by Landau, BKN Investments would be credited with a $39,466 contribution to Diego Pops, LLC, yet Jocque never issued any membership interest in Diego Pops, LLC to BKN Investments and never returned the $39,466 contribution to BKN Investments.

**Diego Pops, LLC's Build Out and Operation of Diego Pops**

170. Soon after the execution of the Diego Pops Operating Agreement, Diego Pops, LLC, at Jocque's direction and with Jocque's supervision, began the process of building out the space at 4338 N. Scottsdale Road (the "Diego Pops Build Out").

171. To complete the Diego Pops Build Out, Jocque hired a general contractor to obtain permitting and comply with other requirements, but Jocque oversaw the Diego Pops Build Out and hired subcontractors to perform the work.

19

Ballard Spahr LLP
1 East Washington Street, Suite 2300
Phoenix, AZ 85004-2555
Telephone: 602.798.5400

172. Jocque represented to Landau and the other members of Diego Pops, LLC that the Diego Pops Build Out would cost $750,000. On information and belief, the Diego Pops Build Out cost no more than $350,000. Jocque grossly overstated the cost of the Diego Pops Build Out by $400,000 including overstatement of fixed assets and leasehold improvements.

173. On information and belief, Jocque directed the additional $400,000 allegedly used for the Diego Pops Build Out to other projects, specifically for the benefit of CSCRE, in which Jocque owns a majority interest, and construction and remodeling work completed at the Jocques' personal residence.

174. On information and belief, Jocque loaned a paltry $28,500 to Diego Pops, LLC and has, to date, received $199,243.87 in payments from Diego Pops, LLC.

175. On information and belief, Jocque concealed many of his fraudulent or self-interested transactions related to Diego Pops, LLC through his use of various undisclosed bank accounts opened on behalf of Diego Pops, LLC at numerous banking institutions.

176. On information and belief, Jocque operates a scheme through Diego Pops, LLC whereby Jocque pays fictitious vendors and funnels the money to accounts owned or controlled by Jocque.

**Ownership Interests in Diego Pops, LLC**

177. Diego Pops, LLC's QuickBooks, over which Jocque exerts complete control through George Flores of Lucid Entertainment and Norma Black, indicate that Jocque has contributed $28,500 to Diego Pops, LLC. According to the same QuickBooks records, Jocque has received more than $199,000 in distributions between the LLC's formation and 2017.

178. In comparison, D2W made $82,500 in equity contributions to Diego Pops, LLC and did not receive any distribution until 2017.

179. At or around the time of the execution of the Diego Pops Operating Agreement, Jocque's mother, Marcia Bower, contributed $200,000 to Diego Pops, LLC.

180. The $200,000, at Jocque's direction, was documented as a loan to Diego

Ballard Spahr LLP
1 East Washington Street, Suite 2300
Phoenix, AZ 85004-2555
Telephone: 602.798.5400

20

Pops, LLC.

181. This alleged loan was obtained by Jocque on behalf of Diego Pops, LLC without Landau's consent. Diego Pops, LLC, at Jocque's direction and without Landau's consent, repaid Ms. Bower the full amount of her $200,000 loan.

182. Although the only funds Ms. Bower contributed to Diego Pops, LLC were repaid, Jocque, without Landau's consent, and in direct violation of the operating agreement, granted Ms. Bower a 2.5% ownership interest in Diego Pops, LLC. Jocque granted Ms. Bower this 2.5% ownership interest in Diego Pops, LLC in exchange for no reasonably equivalent value and to the detriment of Diego Pops, LLC's other members.

183. On information and belief, Jocque engaged in a fraudulent payroll scheme that included:

    a. Generating fraudulent time entries for phantom employees that were not actually employed by Diego Pops, LLC;

    b. Causing checks to be issued to phantom employees that were not actually employed by Diego Pops, LLC;

    c. Personally collecting the payments made to phantom employees that were not actually employed by Diego Pops, LLC; and

    d. Hiring and making payments to employees that lacked the legal ability to work in the United States;

184. In short, despite generating revenues in excess of $5 million, according the QuickBooks controlled by Jocque, Diego Pops, LLC has paid its legitimate investors approximately $138,000.

185. Tellingly, $151,000 (over 50% of the total distributions) was paid by Jocque to himself.

**The Fraudulent Moon Buy Out**

186. In early March of 2017, Jocque approached Moon seeking to purchase Moon's ownership in Diego Pops, LLC.

187. In March of 2017, Moon held a 35% ownership interest in Diego Pops,

Ballard Spahr LLP
1 East Washington Street, Suite 2300
Phoenix, AZ 85004-2555
Telephone: 602.798.5400

21

LLC.

188. As of March of 2017, Diego Pops, LLC had never, since its inception, issued a dividend or distribution to any of its members.

189. During the discussions regarding Jocque's purchase of Moon's interest in Diego Pops, LLC, Jocque represented to Moon that Diego Pops, LLC had lost more than $180,000, since its formation and was unlikely to operate at a profit in the near future and provided Moon a copy of a profit and loss statement for Diego Pops, LLC for January through December 2014. A true and correct copy of the profit and loss statement is attached as **Exhibit E**.

190. Based on Jocque's representations, Moon agreed to sell his interest in Diego Pops, LLC to Jocque for $253,000, the same amount Moon had contributed to Diego Pops, LLC to acquire his 35% ownership interest.

191. Prior to Jocque's request that Moon sell his interest in Diego Pops, LLC, and without Moon's or any other member's knowledge, Jocque caused Diego Pops, LLC to draft distribution checks to its members. These distribution checks were drafted and dated in February of 2017.

192. Jocque intentionally misrepresented the financial stability of Diego Pops, LLC to Moon in an effort to buy out his position at a substantial discount.

193. On information and belief, Jocque intentionally withheld the distribution checks pending his purchase of Moon's ownership interest in Diego Pops, LLC.

194. On information and belief, after buying Moon's interest in Diego Pops, LLC, Jocque directed Norma Black to void the previously drafted distribution checks and issue new checks.

195. But for Jocque's representations regarding the financial condition of Diego Pops, LLC, Moon would not have agreed to sell his ownership interest to Jocque.

196. After Jocque completed the purchase of Moon's ownership interest in Diego Pops, LLC, Jocque caused Diego Pops, LLC to issue the distributions on March 21, 2017.

Ballard Spahr LLP
1 East Washington Street, Suite 2300
Phoenix, AZ 85004-2555
Telephone: 602.798.5400

Ballard Spahr LLP
1 East Washington Street, Suite 2300
Phoenix, AZ 85004-2555
Telephone: 602.798.5400

197.   On information and belief, Jocque delayed issuance of the distribution until March 21, 2017 for the express purpose of depressing the price Moon would accept for his ownership interest in Diego Pops, LLC.

198.   On information and belief, Jocque took possession of Moon's ownership interest thus increasing his own percentage ownership of the company.

199.   On information and belief, Jocque made a down payment of $117,500 in March of 2017 to purchase Moon's interest in Diego Pops, LLC and executed a promissory note in favor of Moon to pay the remainder of the artificially depressed purchase price.

200.   After buying out Moon, Jocque represented to Landau that Jocque intended to take out a personal loan in the amount of $215,000.

201.   Rather than take out a personal loan, Jocque caused Diego Pops, LLC to borrow $215,000 from First Bank without Landau's consent or authorization.

202.   Jocque used the proceeds of the $215,000 loan to repay debts allegedly owed to Marcia Bower, BKN Management, and Cake Walk Management, LLC.

203.   On information and belief, the debts Jocque repaid with the $215,000 loan proceeds were fictional and no money was actually owed.

**Undisclosed Bank Accounts**

204.   On information and belief, Jocque opened numerous accounts in the names of BKN Investments, BKN Real Estate, Diego Pops, LLC, DP Holdings, and SRR (the "Undisclosed Accounts") at various banks.  Jocque failed to disclose the existence of the Undisclosed Accounts to the affected Business Entities' members or on the affected Business Entities' books and records.

205.   On information and belief, Jocque opened accounts ending in 2637 and 3694 with Pinnacle Bank in the name of BKN Investments.

206.   On information and belief the accounts ending in 2637 and 3694 contain tens of thousands of dollars in funds that were not reported on BKN Investments' books and records.

23

Ballard Spahr LLP
1 East Washington Street, Suite 2300
Phoenix, AZ 85004-2555
Telephone: 602.798.5400

207.    Jocque never disclosed the existence of the accounts ending in 2637 and 3694 to BKN Investments' members.

208.    On information and belief, Jocque opened an account ending in 3561 with Chase Bank in the name of BKN Real Estate.

209.    On information and belief the account ending in 3561 contains funds that were not reported on BKN Real Estate's books and records.

210.    Jocque never disclosed the existence of the account ending in 3561 to BKN Real Estate's members.

211.    On information and belief, Jocque opened an account ending in 6458 with First Bank in the name of Diego Pops, LLC.

212.    On information and belief the account ending in 6458 contains funds that were not reported on Diego Pops, LLC's books and records.

213.    Jocque never disclosed the existence of the account ending in 6458 to Diego Pops, LLC's members.

214.    On information and belief, Jocque opened an account ending in 0457 with Chase Bank and accounts ending in 6259 and 8523 with Wells Fargo Bank in the name of DP Holdings.

215.    On information and belief the accounts ending in 0457, 6259, and 8523 contain tens of thousands of dollars that were not reported on DP Holdings' books and records.

216.    Jocque never disclosed the existence of the accounts ending in 0457, 6259, and 8523 to DP Holdings' members.

217.    On information and belief, Jocque opened accounts ending in 6027 and 9785 with US Bank and an account ending in 2456 with Wells Fargo Bank in the name of SRR.

218.    On information and belief the accounts ending in 6027, 9785, and 2456 contain tens of thousands of dollars that were not reported on SRR's books and records.

219.    Jocque never disclosed the existence of the accounts ending in 6027, 9785,

24

Ballard Spahr LLP
1 East Washington Street, Suite 2300
Phoenix, AZ 85004-2555
Telephone: 602.798.5400

1 and 2456 to SRR's members.

2     220.   On information and belief, Jocque used the Undisclosed Accounts for

3 Jocque's own personal benefit and to the detriment of the affected Business Entities and

4 their members.

5             **Jocque's Consolidation of Control of the Business Entities**

6     221.   Beginning in 2017, Jocque began to limit Landau's access to financial and

7 management information about the Business Entities of which Landau is manager.

8     222.   In one example, Jocque directed National PEO, a payroll company that

9 allegedly works with Bridge Entertainment, not to provide Landau, who is a manager of

10 Bridge Entertainment, with any information regarding Bridge Entertainment's payroll

11 reports.

12     223.   On or about June 6, 2017, Jocque relocated the offices of the Business

13 Entities without Landau's knowledge or consent.

14     224.   In 2017, after Landau began investigating Jocque's management and

15 control the Business Entities, Jocque directed Norma Black, the bookkeeper for the

16 Business Entities to deny Landau access to the books, records, and bank accounts.

17     225.   In July of 2016, Jocque directed Norma Black to change the logins and

18 passwords for accounts to which Landau was entitled access as a manager of the Business

19 Entities.

20     226.   Jocque's tactics to unilaterally control the financial and bank account

21 information for the Business Entities has effectively handicapped Landau's ability to

22 protect the interest of the other members of the Business Entities.

23     227.   After Landau began his investigation of Jocque's management and control

24 of the Business Entities, Jocque directed employees of the Business Entities to deny that

25 Landau was a member or manager of any of the entities to anyone who asked about

26 Landau's involvement with the entities.

27 ///

28 ///

# FIRST CLAIM FOR RELIEF

## (Breach of Fiduciary Duty – BKN Real Estate)

## (Against Defendant Jocque as to Plaintiffs KD, LLC and BKN Real Estate)

228.    Plaintiffs incorporate the allegations set forth in paragraphs 1 through 227 of the Complaint as if fully set forth herein.

229.    Jocque occupied a fiduciary position vis-à-vis Plaintiffs that resulted in Jocque owing Plaintiffs a duty of utmost loyalty, good faith, and fair dealing.

230.    Jocque breached the fiduciary duties owed to Plaintiffs by, *inter alia*:

    a. Signing away BKN Real Estate's right of first refusal to purchase the property located at 7158 East 5th Avenue, Scottsdale, Arizona and then engaging in a scheme to purchase the same property for himself; and

    b. Failing to disclose to BKN Real Estate's members, or indicate on BKN Real Estate's books and records, the existence of accounts Jocque opened and maintained in BKN Real Estate's name.

231.    As a direct and proximate result of Jocque's breaches of his fiduciary duties, Plaintiffs have suffered damages.

232.    As a further direct and proximate result Jocque's breaches of his fiduciary duties, Plaintiffs have incurred, and will continue to incur, attorneys' fees and costs in connection with this litigation. Plaintiffs are entitled to recover all such attorneys' fees and costs, the exact amount of which will be proven at trial.

WHEREFORE, Plaintiffs pray for judgment against Jocque, as follows:

A.    Finding that Jocque breached his fiduciary duties;

B.    Awarding Plaintiffs damages, including pre and post-judgment interest, and attorneys' fees and costs pursuant to A.R.S. §§ 12-341 and 12-341.01; and

C.    For such other and further relief as the Court may deem just and proper.

/ / /

/ / /

Ballard Spahr LLP
1 East Washington Street, Suite 2300
Phoenix, AZ 85004-2555
Telephone: 602.798.5400

26

## SECOND CLAIM FOR RELIEF

### (Common Law Fraud – BKN Investments)

### (Against Defendant Jocque as to Plaintiffs KD, LLC and BKN Investments)

233. Plaintiffs incorporate the allegations set forth in paragraphs 1 through 232 of the Complaint as if fully set forth herein.

234. The above specifically described misrepresentations and omissions made by Jocque with regard to the equity ownership BKN Investments would hold in Diego Pops, LLC and Bridge Entertainment constitute misstatements or omissions of material fact. A reasonable person in Plaintiffs' position would attach importance to these misrepresentations and omissions.

235. Specifically, Jocque made material misrepresentations, including but not limited to:

    a. BKN Investments would hold a controlling 70% equity interest in Bridge Entertainment;

    b. BKN Investments would hold a controlling equity interest in Diego Pops, LLC; and

    c. Failing to disclose the Undisclosed Accounts opened on behalf of BKN Investments to BKN Investments' members or on BKN Investments' books and records.

236. These representations were false and/or misleading.

237. These representations were intended to and did fraudulently induce Plaintiffs to rely on these representations and to agree to contribute and raise capital on behalf of BKN Investments.

238. Plaintiffs justifiably relied on the misrepresentations in their decisions to acquiesce to Jocque's actions. But for the fraud specifically pled herein, Plaintiffs would not have acquiesced to Jocque's actions and would have sought his removal as a manager of Bridge Entertainment

Ballard Spehr LLP
1 East Washington Street, Suite 2300
Phoenix, AZ 85004-2555
Telephone: 602.798.5400

27

239. Plaintiffs were unaware of the falsity of Jocque's representations and reasonably relied on their truth in raising capital and acquiescing to Jocque's actions.

240. As a direct and proximate result of the foregoing conduct, Plaintiffs have been injured and damaged in an amount to be proven at trial.

241. In engaging in the foregoing conduct, Jocque acted with malice, fraud and oppression, and with a conscious and wanton disregard for the rights and interests of the Plaintiffs. Plaintiffs are therefore entitled to an award of punitive and exemplary damages against Jocque.

242. As a further direct and proximate result of Jocque's fraud, Plaintiffs have incurred, and will continue to incur, attorneys' fees and costs. Plaintiffs are entitled to recover all such attorneys' fees and costs, the exact amount of which will be proven at trial.

WHEREFORE, Plaintiffs pray for judgment against Defendant Jocque as follows:

A. Finding that Jocque committed fraud at the expense of Plaintiffs;

B. Awarding Plaintiffs compensatory and punitive damages, and pre and post-judgment interest, and attorneys' fees and costs according to applicable law; and

C. For such other and further relief as the Court may deem just and proper.

### THIRD CLAIM FOR RELIEF

### (Breach of Contract - Operating Agreement CSCRE)

### (Against Defendant Jocque as to Plaintiffs Landau and Moon)

243. Plaintiffs incorporate the allegations set forth in paragraphs 1 through 242 of the Complaint as if fully set forth herein.

244. Pursuant to the terms of the CSCRE Operating Agreement "the consent of two (2) Managers shall be sufficient to make any and all decisions and to do any and all things which the Managers deem to be reasonably required to accomplish the business and objectives of the company."

245. Jocque breached the CSCRE Operating Agreement by:

a. Without the consent of any other manager, Jocque recharacterized Moon's

Ballard Spahr LLP
1 East Washington Street, Suite 2300
Phoenix, AZ 85004-2555
Telephone: 602.798.5400

28

$370,000 capital contribution as a loan;

b. Without the consent of any other manager, Jocque repaid Moon $100,000 on account of the recharacterized capital contribution; and

c. Without the consent of any other manager, Jocque issued distributions to CSCRE's members.

246. As a direct and proximate result of Jocque's breaches of the CSCRE Operating Agreement, Plaintiffs have suffered damages.

247. As a further direct and proximate result Jocque's breaches of the CSCRE Operating Agreement, Plaintiffs have incurred, and will continue to incur, attorneys' fees and costs in connection with this litigation. Plaintiffs are entitled to recover all such attorneys' fees and costs, the exact amount of which will be proven at trial

WHEREFORE, Plaintiffs pray for judgment against Jocque, as follows:

A. Finding that Jocque breached the CSCRE Operating Agreement;

B. Awarding Plaintiffs their damages, including pre and post-judgment interest, and attorneys' fees and costs pursuant to A.R.S. §§ 12-341 and 12-341.01; and

C. For such other and further relief as the Court may deem just and proper.

## FOURTH CLAIM FOR RELIEF

### (Breach of Fiduciary Duty – CSCRE)

### (Against Defendant Jocque as to Plaintiffs Landau and Moon)

248. Plaintiffs incorporate the allegations set forth in paragraphs 1 through 247 of the Complaint as if fully set forth herein.

249. Jocque occupied a fiduciary position vis-à-vis Plaintiffs that resulted in Jocque owing Plaintiffs a duty of utmost loyalty, good faith, and fair dealing.

250. Jocque breached the fiduciary duties owed to Plaintiffs by:

a. Without the consent of any other manager, Jocque recharacterized Moon's $370,000 capital contribution as a loan;

b. Without the consent of any other manager, Jocque repaid Moon $100,000

Ballard Spahr LLP
1 East Washington Street, Suite 2300
Phoenix, AZ 85004-2555
Telephone: 602.798.5400

29

1     on account of the recharacterized capital contribution; and

2        c.   Jocque failed to disclose to CSCRE's members, or indicate on CSCRE's

3             books and records, the existence of accounts Jocque opened and maintained

4             in CSCRE's name.

5     251.   As a direct and proximate result of Jocque's breaches of his fiduciary

6  duties, Plaintiffs have suffered damages.

7     252.   As a further direct and proximate result Jocque's breaches of his fiduciary

8  duties, Plaintiffs have incurred, and will continue to incur, attorneys' fees and costs in

9  connection with this litigation. Plaintiffs are entitled to recover all such attorneys' fees

10 and costs, the exact amount of which will be proven at trial.

11    WHEREFORE, Plaintiffs pray for judgment against Jocque, as follows:

12    A.    Finding that Jocque breached his fiduciary duties;

13    B.    Awarding Plaintiffs damages, including pre and post-judgment interest, and

14 attorneys' fees and costs pursuant to A.R.S. §§ 12-341 and 12-341.01; and

15    C.    For such other and further relief as the Court may deem just and proper.

16                   **FIFTH CLAIM FOR RELIEF**

17                   **(Common Law Fraud – CSCRE)**

18

19    **(Against Defendant Jocque as to Plaintiffs Moon and Landau)**

20    253.   Plaintiffs incorporate the allegations set forth in paragraphs 1 through 252

21 of the Complaint as if fully set forth herein.

22    254.   The above specifically described misrepresentations and omissions made

23 by Jocque with regard to his recharacterization of Moon's capital contribution to CSCRE

24 constitute misstatements or omissions of material fact. A reasonable person in Moon's

25 position would attach importance to these misrepresentations and omissions.

26    255.   Specifically, Jocque made material misrepresentations, including but not

27 limited to:

28        a.   Moon's contribution of $370,000 to CSCRE would be a capital

Ballard Spahr LLP
1 East Washington Street, Suite 2300
Phoenix, AZ 85004-2555
Telephone: 602.798.5400

30

contribution;

    b. In exchange for his contribution of $370,000 to CSCRE, Moon would receive 40% ownership interest in CSCRE;

    c. Moon's 40% ownership interest would be split 20% going to Moon and 20% going to Landau, with Landau receiving a 20% interest in CSCRE and the Chandler Building in exchange for bringing in Moon's $370,000 investment; and

    d. Failing to disclose to CSCRE's members, or indicate on CSCRE's books and records, the existence of accounts Jocque opened and maintained in CSCR's name.

256. These representations were false and/or misleading.

257. These representations were intended to and did fraudulently induce Plaintiffs to rely on these representations.

258. Moon justifiably relied on the misrepresentations in his decision to contribute $370,000 to CSCRE.

259. Moon was unaware of the falsity of Jocque's representations and reasonably relied on their truth in agreeing to contribute $370,000 to CSCRE.

260. As a direct and proximate result of the foregoing conduct, Plaintiffs have been injured and damaged in an amount to be proven at trial.

261. In engaging in the foregoing conduct, Jocque acted with malice, fraud and oppression, and with a conscious and wanton disregard for the rights and interests of the Plaintiffs. Plaintiffs are therefore entitled to an award of punitive and exemplary damages against Jocque.

262. As a further direct and proximate result of Jocque's fraud, Plaintiffs have incurred, and will continue to incur, attorneys' fees and costs. Plaintiffs are entitled to recover all such attorneys' fees and costs, the exact amount of which will be proven at trial.

WHEREFORE, Plaintiffs pray for judgment against Defendant Jocque as follows:

Ballard Spahr LLP
1 East Washington Street, Suite 2300
Phoenix, AZ 85004-2555
Telephone: 602.798.5400

31

A.   Finding that Jocque committed fraud at the expense of Plaintiffs;

B.   Awarding Plaintiffs compensatory and punitive damages, and pre and post-judgment interest, and attorneys' fees and costs according to applicable law; and

C.   For such other and further relief as the Court may deem just and proper.

<u>**SIXTH CLAIM FOR RELIEF**</u>

**(Breach of Fiduciary Duty – Bridge Entertainment)**

**(Against Defendant Jocque as to Plaintiffs Moon, KD, LLC, and D2W)**

263.   Plaintiffs incorporate the allegations set forth in paragraphs 1 through 262 of the Complaint as if fully set forth herein.

264.   Jocque occupied a fiduciary position vis-à-vis Plaintiffs that resulted in Jocque owing Plaintiffs a duty of utmost loyalty, good faith, and fair dealing.

265.   Jocque breached the fiduciary duties owed to Plaintiffs by:

a.   Misrepresenting the cost of the Montauk Build Out;

b.   Granting URI Investments, Inc. a 9.9% equity interest in Bridge Entertainment in exchange for cancellation of alleged debt owed to URI Construction, Inc. related to the Montauk Build Out;

c.   Charging Bridge Entertainment for construction and improvements completed on CSCRE's Chandler Building;

d.   Converting Jocque's capital contributions to Bridge Entertainment into debt;

e.   Causing Bridge Entertainment to assume liability for an $87,500 loan Jocque made to BKN Management, LLC;

f.   Engaging in a payroll scheme for his own benefit that included payments to phantom employees;

g.   Converting non-party William Asher's $40,000 capital contribution into debt for no apparent benefit to Bridge Entertainment; and

h.   Failing to disclose to Bridge Entertainment's members, or indicate on Bridge Entertainment's books and records, the existence of accounts Jocque

32

Ballard Spahr LLP
1 East Washington Street, Suite 2300
Phoenix, AZ 85004-2555
Telephone: 602.798.5400

opened and maintained in Bridge Entertainment's name.

266.    As a direct and proximate result of Jocque's breaches of his fiduciary duties, Plaintiffs have suffered damages.

267.    As a further direct and proximate result Jocque's breaches of his fiduciary duties, Plaintiffs have incurred, and will continue to incur, attorneys' fees and costs in connection with this litigation.  Plaintiffs are entitled to recover all such attorneys' fees and costs, the exact amount of which will be proven at trial.

WHEREFORE, Plaintiffs pray for judgment against Jocque, as follows:

A.    Finding that Jocque breached his fiduciary duties;

B.    Awarding Plaintiffs damages, including pre and post-judgment interest, and attorneys' fees and costs pursuant to A.R.S. §§ 12-341 and 12-341.01; and

C.    For such other and further relief as the Court may deem just and proper.

## SEVENTH CLAIM FOR RELIEF

### (Common Law Fraud – Bridge Entertainment)

### (Against Defendant Jocque as to Plaintiffs Moon; KD, LLC; and D2W)

268.    Plaintiffs incorporate the allegations set forth in paragraphs 1 through 267 of the Complaint as if fully set forth herein.

269.    The above specifically described misrepresentations and omissions made by Jocque constitute misstatements or omissions of material fact.  A reasonable person in Plaintiffs' position would attach importance to these misrepresentations and omissions.

270.    Specifically, Jocque made material misrepresentations and omissions, including but not limited to:

    a.  Misrepresenting the cost of the Montauk Build Out;

    b.  Misrepresenting the validity of granting URI Investments, Inc. a 9.9% equity interest in Bridge Entertainment in exchange for cancellation of alleged debt owed to URI Construction, Inc. related to the Montauk Build Out;

    c.  Misrepresenting the validity of charging Bridge Entertainment for

Ballard Spahr LLP
1 East Washington Street, Suite 2300
Phoenix, AZ 85004-2555
Telephone: 602.798.5400

Ballard Spahr LLP
1 East Washington Street, Suite 2300
Phoenix, AZ 85004-2555
Telephone: 602.798.5400

1    construction and improvements completed on CSCRE's Chandler Building.

2    d.  Misrepresenting the validity of converting his capital contributions to

3        Bridge Entertainment into debt;

4    e.  Misrepresenting the validity of Bridge Entertainment's assumption of

5        liability for an $87,500 loan Jocque made to BKN Management, LLC;

6    f.  Misrepresenting the validity of converting non-party William Asher's

7        $40,000 capital contribution into debt for no apparent benefit to Bridge

8        Entertainment;

9    g.  Misrepresenting the validity of his entitlement to distributions, on account

10       of equity interests, in the amount of $54,000;

11   h.  Misrepresenting the validity of his issuance of membership interests in

12       Bridge Entertainment to Asher;

13   i.  Misrepresenting the validity and accuracy of Bridge Entertainment's tax

14       returns, which in fact did not reflect the capital contributions as listed in

15       Bridge Entertainment's QuickBooks;

16   j.  Representing the validity of payroll payments made to phantom employees

17       and actual employees that lacked legal status to work in the United States;

18       and

19   k.  Failing to disclose to Bridge Entertainment's members, or indicate on

20       Bridge Entertainment's books and records, the existence of accounts Jocque

21       opened and maintained in Bridge Entertainment's name.

22   271.  These representations were false and/or misleading.

23   272.  These representations were intended to and did fraudulently induce

24   Plaintiffs to rely on these representations and to acquiesce to the actions taken by Jocque.

25   273.  Plaintiffs justifiably relied on the misrepresentations in their decisions to

26   acquiesce to Jocque's actions. But for the fraud specifically pled herein, Plaintiffs would

27   not have acquiesced to Jocque's actions and would have sought his removal as a manager

28   of Bridge Entertainment.

34

274. Plaintiffs were unaware of the falsity of Jocque's representations and reasonably relied on their truth in agreeing to acquiesce to Jocque's actions.

275. As a direct and proximate result of the foregoing conduct, Plaintiffs have been injured and damaged in an amount to be proven at trial.

276. In engaging in the foregoing conduct, Jocque acted with malice, fraud and oppression, and with a conscious and wanton disregard for the rights and interests of the Plaintiffs. Plaintiffs are therefore entitled to an award of punitive and exemplary damages against Jocque.

277. As a further direct and proximate result of Jocque's fraud, Plaintiffs have incurred, and will continue to incur, attorneys' fees and costs. Plaintiffs are entitled to recover all such attorneys' fees and costs, the exact amount of which will be proven at trial.

WHEREFORE, Plaintiffs pray for judgment against Defendant Jocque as follows:

A. Finding that Jocque committed fraud at the expense of Plaintiffs;

B. Awarding Plaintiffs compensatory and punitive damages, and pre and post-judgment interest, and attorneys' fees and costs according to applicable law; and

C. For such other and further relief as the Court may deem just and proper.

## EIGHTH CLAIM FOR RELIEF

### (Breach of Operating Agreement – Diego Pops, LLC)

### (Against Defendant Jocque as to Plaintiffs Moon; Landau; KD, LLC; D2W; and Escobar)

278. Plaintiffs incorporate the allegations set forth in paragraphs 1 through 277 of the Complaint as if fully set forth herein.

279. Pursuant to the terms of the Diego Pops, LLC Operating Agreement "the consent of two (2) Managers shall be sufficient to make any and all decisions and to do any and all things which the Managers deem to be reasonably required to accomplish the business and objectives of the company."

280. Jocque breached the Diego Pops, LLC Operating Agreement by:

Ballard Spahr LLP
1 East Washington Street, Suite 2300
Phoenix, AZ 85004-2555
Telephone: 602.798.5400

35

a. Without the consent of any other manager, Jocque caused Diego Pops, LLC to pay Moon $55,000 in relation to Jocque's purchase of Moon's $370,000 capital contribution to CSCRE, which Jocque unilaterally recharacterized as a loan, and for which Diego Pops, LLC received no benefit;

b. Without the consent of any other manager, Jocque caused Diego Pops, LLC to borrow $215,000 from First Bank;

c. Without the consent of any other manager, Jocque caused Diego Pops, LLC to borrow $200,000 from Marcia Bower; and

d. Without the consent of any other manager, Jocque issued Marcia Bower an ownership interest in Diego Pops, LLC in exchange for no reasonably equivalent value;

281.    As a direct and proximate result of Jocque's breaches of the Diego Pops, LLC Operating Agreement, Plaintiffs have suffered damages.

282.    As a further direct and proximate result Jocque's breaches of the Diego Pops, LLC Operating Agreement, Plaintiffs have incurred, and will continue to incur, attorneys' fees and costs in connection with this litigation. Plaintiffs are entitled to recover all such attorneys' fees and costs, the exact amount of which will be proven at trial.

WHEREFORE, Plaintiffs pray for judgment against Defendant Jocque, as follows:

A.    Finding that Jocque breached the Diego Pops, LLC Operating Agreement;

B.    Awarding Plaintiffs their damages, including pre and post-judgment interest, and attorneys' fees and costs pursuant to A.R.S. §§ 12-341 and 12-341.01; and

C.    For such other and further relief as the Court may deem just and proper.

## NINTH CLAIM FOR RELIEF

### (Breach of Fiduciary Duty – Diego Pops, LLC)

### (Against Defendant Jocque as to Plaintiffs Moon, Landau, D2W, and Escobar)

283.    Plaintiffs incorporate the allegations set forth in paragraphs 1 through 282

Ballard Spahr LLP
1 East Washington Street, Suite 2300
Phoenix, AZ 85004-2555
Telephone: 602.798.5400

of the Complaint as if fully set forth herein.

284. Jocque occupied a fiduciary position vis-à-vis Plaintiffs that resulted in Jocque owing Plaintiffs a duty of utmost loyalty, good faith, and fair dealing.

285. Jocque breached the fiduciary duties he owed to Plaintiffs by:

    a. Representing the cost of the Diego Pops Build Out was $750,000 when, on information and belief, it only cost $350,000;

    b. Representing that certain expenses were for the Diego Pops Build Out when they were instead used for improvements at the Jocques' home;

    c. Representing that certain expenses were for the Diego Pops Build Out when they were instead used for improvements to CSCRE's Chandler Building;

    d. Withholding the fact that Diego Pops, LLC would issue its first distribution to members and that distribution checks had been drafted and then directing they be voided and reissued after the Moon Buy Out;

    e. Causing Diego Pops, LLC to pay Moon $55,000 in relation to Jocque's purchase of Moon's $370,000 capital contribution to CSCRE, which Jocque unilaterally recharacterized as a loan , and for which Diego Pops, LLC received no benefit;

    f. Causing Diego Pops, LLC to borrow $215,000 from First Bank;

    g. Causing Diego Pops, LLC to borrow $200,000 from Marcia Bower, which was repaid in full, but still resulted in Jocque's issuance of a 2.5% ownership interest to Ms. Bower for no reasonably equivalent value;

    h. Engaging in a payroll scheme for his own benefit that included payments to phantom employees; and

    i. Failing to disclose to Diego Pops, LLC's members, or indicate on Diego Pops, LLC's books and records, the existence of accounts Jocque opened and maintained in Diego Pops, LLC's name.

286. As a direct and proximate result of Jocque's breaches of his fiduciary duties

Ballard Spahr LLP
1 East Washington Street, Suite 2300
Phoenix, AZ 85004-2555
Telephone: 602.798.5400

37

Plaintiffs have suffered damages.

287. As a further direct and proximate result Jocque's breaches of his fiduciary duties, Plaintiffs have incurred, and will continue to incur, attorneys' fees and costs in connection with this litigation. Plaintiffs are entitled to recover all such attorneys' fees and costs, the exact amount of which will be proven at trial.

WHEREFORE, Plaintiffs pray for judgment against Jocque, as follows:

A.     Finding that Jocque breached his fiduciary duties;

B.     Awarding Plaintiffs damages, including pre and post-judgment interest, and attorneys' fees and costs pursuant to A.R.S. §§ 12-341 and 12-341.01; and

C.     For such other and further relief as the Court may deem just and proper.

## TENTH CLAIM FOR RELIEF

### (Breach of Fiduciary Duty – Moon Buy Out)

### (Against Defendant Jocque as to Plaintiff Moon)

288. Plaintiffs incorporate the allegations set forth in paragraphs 1 through 287 of the Complaint as if fully set forth herein.

289. Jocque occupied a fiduciary position vis-à-vis Moon that resulted in Jocque owing Moon, as a member of Diego Pops, LLC, a duty of utmost loyalty, good faith, and fair dealing.

290. Jocque breached the fiduciary duties owed to Moon by:

    a. Representing that Diego Pops, LLC lost more than $180,000 since its inception and was unlikely to operate profitably in the near future; and

    b. Withholding the fact that Diego Pops, LLC would issue its first distribution to members and that distribution checks had already been drafted.

291. As a direct and proximate result of Jocque's breaches of fiduciary duty, Moon has suffered damages.

292. As a further direct and proximate result Jocque's breaches of his fiduciary duty, Moon has incurred, and will continue to incur, attorneys' fees and costs in

Ballard Spahr LLP
1 East Washington Street, Suite 2300
Phoenix, AZ 85004-2555
Telephone: 602.798.5400

connection with this litigation. Moon is entitled to recover all such attorneys' fees and costs, the exact amount of which will be proven at trial.

WHEREFORE, Plaintiffs pray for judgment against Jocque, as follows:

A.      Finding that Jocque breached his fiduciary duties;

B.      Awarding Moon his damages, including pre and post-judgment interest, and attorneys' fees and costs pursuant to A.R.S. §§ 12-341 and 12-341.01; and

C.      For such other and further relief as the Court may deem just and proper.

## ELEVENTH CLAIM FOR RELIEF

### (Common Law Fraud – Moon Buy Out)

### (Against Defendant Jocque as to Plaintiff Moon)

293.    Plaintiffs incorporate the allegations set forth in paragraphs 1 through 292 of the Complaint as if fully set forth herein.

294.    The above specifically described misrepresentations and omissions made by Jocque with regard to his purchase of Moon's ownership interest in Diego Pops, LLC constitute misstatements or omissions of material fact. A reasonable person in Moon's position would attach importance to these misrepresentations and omissions.

295.    Specifically, Jocque made material misrepresentations and omissions, including but not limited to:

  a. Representing that Diego Pops, LLC lost more than $180,000 since its inception and was unlikely to operate profitably in the near future; and

  b. Withholding the fact that Diego Pops, LLC would issue its first distribution to members and that distribution checks had already been drafted.

296.    These representations were false and/or misleading.

297.    These representations were intended to and did fraudulently induce Moon to rely on these representations and to agree to sell his ownership interest in Diego Pops, LLC at an artificially depressed price.

298.    Moon justifiably relied on the misrepresentations in his decision to sell his ownership interest in Diego Pops, LLC. But for the fraud specifically pled herein, Moon

Ballard Spahr LLP
1 East Washington Street, Suite 2300
Phoenix, AZ 85004-2555
Telephone: 602.798.5400

39

would not have agreed to sell his ownership interest in Diego Pops, LLC.

299. Moon was unaware of the falsity of Jocque's representations and reasonably relied on their truth in agreeing to sell his ownership interest in Diego Pops, LLC.

300. As a direct and proximate result of the foregoing conduct, Moon has been injured and damaged in an amount to be proven at trial.

301. In engaging in the foregoing conduct, Jocque acted with malice, fraud and oppression, and with a conscious and wanton disregard for the rights and interests of Moon. Moon is therefore entitled to an award of punitive and exemplary damages against Jocque.

302. As a further direct and proximate result of Jocque's fraud, Moon has incurred, and will continue to incur, attorneys' fees and costs. Moon is entitled to recover all such attorneys' fees and costs, the exact amount of which will be proven at trial.

WHEREFORE, Plaintiffs pray for judgment against Jocque as follows:

A. Finding that Jocque committed fraud at the expense of Moon;

B. Awarding Moon compensatory and punitive damages, and pre and post-judgment interest, and attorneys' fees and costs according to applicable law; and

C. For such other and further relief as the Court may deem just and proper.

### TWELFTH CLAIM FOR RELIEF

#### (Common Law Fraud – Diego Pops)

**(Against Defendant Jocque as to Plaintiffs Moon; Landau; KD, LLC; D2W; and Escobar)**

303. Plaintiffs incorporate the allegations set forth in paragraphs 1 through 302 of the Complaint as if fully set forth herein.

304. The above specifically described misrepresentations and omissions made by Jocque constitute misstatements or omissions of material fact. A reasonable person in Plaintiffs' position would attach importance to these misrepresentations and omissions.

305. Specifically, Jocque made material misrepresentations, including but not

40

Ballard Spahr LLP
1 East Washington Street, Suite 2300
Phoenix, AZ 85004-2555
Telephone: 602.798.5400

limited to:

    a.  Representing the cost of the Diego Pops Build Out was $750,000 when, on information and belief, it only cost $350,000;

    b.  Representing that certain expenses were for the Diego Pops Build Out when they were instead used for improvements at the Jocques' home;

    c.  Representing that certain expenses were for the Diego Pops Build Out when they were instead used for improvements to CSCRE's Chandler Building;

    d.  Withholding the fact that Diego Pops, LLC would issue its first distribution to members and that distribution checks had been drafted and then directing they be voided and reissued after the Moon Buy Out;

    e.  Causing Diego Pops, LLC to pay Moon $55,000 in relation to Jocque's purchase of Moon's $370,000 capital contribution to CSCRE, which Jocque unilaterally recharacterized as a loan , and for which Diego Pops, LLC received no benefit;

    f.  Causing Diego Pops, LLC to borrow $215,000 from First Bank;

    g.  Causing Diego Pops, LLC to borrow $200,000 from Marcia Bower, which was repaid in full, but still resulted in Jocque's issuance of a 2.5% ownership interest to Ms. Bower for no reasonably equivalent value; and

    h.  Misrepresenting the validity of payments made to phantom employees and actual employees that lacked the legal ability to work in the United States.

306.   These representations were false and/or misleading.

307.   These representations were intended to and did fraudulently induce Plaintiffs to rely on these representations and to acquiesce to the actions taken by Jocque.

308.   Plaintiffs justifiably relied on the misrepresentations in their decision to acquiesce to Jocque's actions. But for the fraud specifically pled herein, Plaintiffs would not have acquiesced to Jocque's actions and would have sought his removal as a manager of Diego Pops, LLC.

Ballard Spahr LLP
1 East Washington Street, Suite 2300
Phoenix, AZ 85004-2555
Telephone: 602.798.5400

309.  Plaintiffs were unaware of the falsity of Jocque's representations and reasonably relied on their truth in agreeing to acquiesce to Jocque's actions.

310.  As a direct and proximate result of the foregoing conduct, Plaintiffs have been injured and damaged in an amount to be proven at trial.

311.  In engaging in the foregoing conduct, Jocque acted with malice, fraud and oppression, and with a conscious and wanton disregard for the rights and interests of Plaintiffs.  Plaintiffs are therefore entitled to an award of punitive and exemplary damages against Jocque.

312.  As a further direct and proximate result of Jocque's fraud, Plaintiffs have incurred, and will continue to incur, attorneys' fees and costs.  Plaintiffs are entitled to recover all such attorneys' fees and costs, the exact amount of which will be proven at trial.

WHEREFORE, Plaintiffs pray for judgment against Jocque as follows:

A.  Finding that Jocque committed fraud at the expense of Plaintiffs;

B.  Awarding Plaintiffs compensatory and punitive damages, and pre and post-judgment interest, and attorneys' fees and costs according to applicable law; and

C.  For such other and further relief as the Court may deem just and proper.

### THIRTEENTH CLAIM FOR RELIEF

### (Common Law Fraud – BKN Real Estate)

### (Against Defendant Jocque as to Plaintiffs KD, LLC)

313.  Plaintiffs incorporate the allegations set forth in paragraphs 1 through 312 of the Complaint as if fully set forth herein.

314.  The above specifically described misrepresentations and omissions made by Jocque constitute misstatements or omissions of material fact.  A reasonable person in Plaintiffs' position would attach importance to these misrepresentations and omissions.

315.  Specifically, Jocque made material misrepresentations, including but not limited to:

a.  Failing to disclose the Undisclosed Accounts opened on behalf of BKN

Ballard Spahr LLP
1 East Washington Street, Suite 2300
Phoenix, AZ 85004-2555
Telephone: 602.798.5400

42

Ballard Spahr LLP
1 East Washington Street, Suite 2300
Phoenix, AZ 85004-2555
Telephone: 602.798.5400

Real Estate to BKN Real Estate's members or on BKN Real Estate's books and records

316. These representations were false and/or misleading.

317. These representations were intended to and did fraudulently induce Plaintiffs to rely on these representations and to acquiesce to the actions taken by Jocque.

318. Plaintiffs justifiably relied on the misrepresentations in their decision to acquiesce to Jocque's actions. But for the fraud specifically pled herein, Plaintiffs would not have acquiesced to Jocque's actions and would have sought his removal as a manager of BKN Real Estate.

319. Plaintiffs were unaware of the falsity of Jocque's representations and reasonably relied on their truth in agreeing to acquiesce to Jocque's actions.

320. As a direct and proximate result of the foregoing conduct, Plaintiffs have been injured and damaged in an amount to be proven at trial.

321. In engaging in the foregoing conduct, Jocque acted with malice, fraud and oppression, and with a conscious and wanton disregard for the rights and interests of Plaintiffs. Plaintiffs are therefore entitled to an award of punitive and exemplary damages against Jocque.

322. As a further direct and proximate result of Jocque's fraud, Plaintiffs have incurred, and will continue to incur, attorneys' fees and costs. Plaintiffs are entitled to recover all such attorneys' fees and costs, the exact amount of which will be proven at trial.

WHEREFORE, Plaintiffs pray for judgment against Jocque as follows:

A. Finding that Jocque committed fraud at the expense of Plaintiffs;

B. Awarding Plaintiffs compensatory and punitive damages, and pre and post-judgment interest, and attorneys' fees and costs according to applicable law; and

C. For such other and further relief as the Court may deem just and proper.

///

///

43

Ballard Spahr LLP
1 East Washington Street, Suite 2300
Phoenix, AZ 85004-2555
Telephone: 602.798.5400

## FOURTEENTH CLAIM FOR RELIEF

### (Common Law Fraud – DP Holdings)

### (Against Defendant Jocque as to Plaintiff BKN Investments)

323. Plaintiffs incorporate the allegations set forth in paragraphs 1 through 322 of the Complaint as if fully set forth herein.

324. The above specifically described misrepresentations and omissions made by Jocque constitute misstatements or omissions of material fact. A reasonable person in Plaintiff's position would attach importance to these misrepresentations and omissions.

325. Specifically, Jocque made material misrepresentations, including but not limited to:

    a. Failing to disclose the Undisclosed Accounts opened on behalf of DP Holdings to DP Holdings' members or on DP Holdings' books and records

326. These representations were false and/or misleading.

327. These representations were intended to and did fraudulently induce Plaintiff to rely on these representations and to acquiesce to the actions taken by Jocque.

328. Plaintiff justifiably relied on the misrepresentations in its decision to acquiesce to Jocque's actions. But for the fraud specifically pled herein, Plaintiff would not have acquiesced to Jocque's actions and would have sought his removal as a manager of DP Holdings.

329. Plaintiff was unaware of the falsity of Jocque's representations and reasonably relied on their truth in agreeing to acquiesce to Jocque's actions.

330. As a direct and proximate result of the foregoing conduct, Plaintiff has been injured and damaged in an amount to be proven at trial.

331. In engaging in the foregoing conduct, Jocque acted with malice, fraud and oppression, and with a conscious and wanton disregard for the rights and interests of Plaintiff. Plaintiff is therefore entitled to an award of punitive and exemplary damages against Jocque.

332. As a further direct and proximate result of Jocque's fraud, Plaintiff has

incurred, and will continue to incur, attorneys' fees and costs. Plaintiff is entitled to recover all such attorneys' fees and costs, the exact amount of which will be proven at trial.

WHEREFORE, Plaintiff prays for judgment against Jocque as follows:

A. Finding that Jocque committed fraud at the expense of Plaintiff;

B. Awarding Plaintiff compensatory and punitive damages, and pre and post-judgment interest, and attorneys' fees and costs according to applicable law; and

C. For such other and further relief as the Court may deem just and proper.

### FIFTEENTH CLAIM FOR RELIEF

#### (Common Law Fraud – SRR)

#### (Against Defendant Jocque as to Plaintiff BKN Real Estate)

333. Plaintiffs incorporate the allegations set forth in paragraphs 1 through 332 of the Complaint as if fully set forth herein.

334. The above specifically described misrepresentations and omissions made by Jocque constitute misstatements or omissions of material fact. A reasonable person in Plaintiff's position would attach importance to these misrepresentations and omissions.

335. Specifically, Jocque made material misrepresentations, including but not limited to:

    a. Failing to disclose the Undisclosed Accounts opened on behalf of SRR to SRR's members or on SRR's books and records

336. These representations were false and/or misleading.

337. These representations were intended to and did fraudulently induce Plaintiff to rely on these representations and to acquiesce to the actions taken by Jocque.

338. Plaintiff justifiably relied on the misrepresentations in its decision to acquiesce to Jocque's actions. But for the fraud specifically pled herein, Plaintiff would not have acquiesced to Jocque's actions and would have sought his removal as a manager of SRR.

339. Plaintiff was unaware of the falsity of Jocque's representations and

Ballard Spahr LLP
1 East Washington Street, Suite 2300
Phoenix, AZ 85004-2555
Telephone: 602.798.5400

1   reasonably relied on their truth in agreeing to acquiesce to Jocque's actions.

2   340.   As a direct and proximate result of the foregoing conduct, Plaintiff has been

3   injured and damaged in an amount to be proven at trial.

4   341.   In engaging in the foregoing conduct, Jocque acted with malice, fraud and

5   oppression, and with a conscious and wanton disregard for the rights and interests of

6   Plaintiff.  Plaintiff is therefore entitled to an award of punitive and exemplary damages

7   against Jocque.

8   342.   As a further direct and proximate result of Jocque's fraud, Plaintiff has

9   incurred, and will continue to incur, attorneys' fees and costs.  Plaintiff is entitled to

10  recover all such attorneys' fees and costs, the exact amount of which will be proven at

11  trial.

12      WHEREFORE, Plaintiff prays for judgment against Jocque as follows:

13      A.      Finding that Jocque committed fraud at the expense of Plaintiff;

14      B.      Awarding Plaintiff compensatory and punitive damages, and pre and post-

15  judgment interest, and attorneys' fees and costs according to applicable law; and

16      C.      For such other and further relief as the Court may deem just and proper.

## SIXTEENTH CLAIM FOR RELIEF

**(Fraudulent Schemes and Artifices (A.R.S. § 13-2310)**

**(Against Defendant Jocque as to Plaintiffs Moon; Landau; KD, LLC; D2W; and Escobar)**

22  343.   Plaintiffs incorporate the allegations set forth in paragraphs 1 through 342

23  of the Complaint as if fully set forth herein.

24  344.   In committing the above mentioned acts or making the above mentioned

25  statements and omissions, Jocque used false or fraudulent pretenses, representations,

26  promises or material omissions.

27  345.   In committing the above mentioned acts or making the above mentioned

28  statements and omissions, Jocque acted pursuant to a scheme or artifice to defraud the

Ballard Spahr LLP
1 East Washington Street, Suite 2300
Phoenix, AZ 85004-2555
Telephone: 602.798.5400

46

Plaintiffs. For example:

    a. Jocque limited Plaintiffs' access to financial and management information about the Business Entities;

    b. Jocque relocated the offices of the Business Entities without Plaintiffs' knowledge or consent;

    c. Jocque directed non-party Norma Black, the bookkeeper for Business Entities to deny Plaintiffs access to the books, records, and bank accounts;

    d. Jocque directed Norma Black to change the logins and passwords for accounts to which Landau was entitled access as a manager of the Business Entities;

    e. Jocque, without Plaintiffs' knowledge or consent, opened and maintained secret bank accounts for the Business Entities; and

    f. Jocque engaged in a payroll scheme for his own benefit across all of the Business Entities included payments to phantom employees.

346. As a further direct and proximate result of Jocque's conduct, Plaintiffs have incurred, and will continue to incur, attorneys' fees and costs in connection with this litigation. Plaintiffs are entitled to recover all such attorneys' fees and costs, the exact amount of which will be proven at trial.

347. WHEREFORE, Plaintiffs pray for judgment against Jocque, as follows:

    a. Finding that Jocque committed fraud at the expense of Plaintiffs;

    b. Awarding Plaintiffs compensatory and punitive damages, pre and post-judgment interest, and attorneys' fees and costs pursuant to applicable law; and

    c. For such other and further relief as the Court may deem just and proper.

///
///
///
///

Ballard Spahr LLP
1 East Washington Street, Suite 2300
Phoenix, AZ 85004-2555
Telephone: 602.798.5400

47

## SEVENTEENTH CLAIM FOR RELIEF

### (Pattern of Unlawful Activity – A.R.S. § 13-2314.04))

### (Against Defendant Jocque as to Plaintiffs Moon; Landau; KD, LLC; D2W; and Escobar)

348. Plaintiffs incorporate the allegations set forth in paragraphs 1 through 347 of the Complaint as if fully set forth herein.

349. Pursuant to a common plan, Jocque employed a scheme or artifice to defraud Plaintiffs, and knowingly obtained benefits by means of false or fraudulent pretenses, representations, promises, or material omissions.

350. These false or fraudulent pretenses, representations, promises, or material omissions, all of which are set forth in detail above, include

    a. Fraudulently representing that Moon's contribution of $370,000 to CSCRE would be a capital contribution;

    b. Fraudulently representing that, in exchange for his contribution of $370,000 to CSCRE, Moon would receive 40% ownership interest in CSCRE;

    c. Fraudulently representing that Moon's 40% ownership interest would be split 20% going to Moon and 20% going to Landau, with Landau receiving a 20% interest in CSCRE and the Chandler Building in exchange for bringing in Moon's $370,000 investment;

    d. Misrepresenting the cost of the Montauk Build Out;

    e. Misrepresenting the validity of granting URI Investments, Inc. a 9.9% equity interest in Bridge Entertainment in exchange for cancellation of alleged debt owed to URI Construction, Inc. related to the Montauk Build Out;

    f. Misrepresenting the validity of charging Bridge Entertainment for construction and improvements completed on CSCRE's Chandler Building.

    g. Misrepresenting the validity of converting Jocque's capital contributions to Bridge Entertainment into debt;

Ballard Spahr LLP
1 East Washington Street, Suite 2300
Phoenix, AZ 85004-2555
Telephone: 602.798.5400

48

Ballard Spahr LLP
1 East Washington Street, Suite 2300
Phoenix, AZ 85004-2555
Telephone: 602.798.5400

h. Misrepresenting the validity of Bridge Entertainment's assumption of liability for an $87,500 loan Jocque made to BKN Management, LLC;

i. Misrepresenting the validity of converting non-party William Asher's $40,000 capital contribution into debt for no apparent benefit to Bridge Entertainment;

j. Misrepresenting the validity of his entitlement to distributions, on account of equity interests, in the amount of $54,000;

k. Misrepresenting the validity of his issuance of membership interests in Bridge Entertainment to Asher;

l. Misrepresenting the validity and accuracy of Bridge Entertainment's tax returns, which in fact did not reflect the capital contributions as listed in Bridge Entertainment's QuickBooks;

m. Representing that Diego Pops, LLC lost more than $180,000 since its inception and was unlikely to operate profitably in the near future;

n. Withholding the fact that Diego Pops, LLC would issue its first distribution to members and that distribution checks had already been drafted.

o. Representing the cost of the Diego Pops Build Out was $750,000 when, on information and belief, it only cost $350,000;

p. Representing that certain expenses were for the Diego Pops Build Out when they were instead used for improvements at the Jocque's home;

q. Representing that certain expenses were for the Diego Pops Build Out when they were instead used for improvements to CSCRE's Chandler Building;

r. Causing Diego Pops, LLC to pay Moon $55,000 in relation to Jocque's purchase of Moon's $370,000 capital contribution to CSCRE, which Jocque unilaterally recharacterized as a loan , and for which Diego Pops, LLC received no benefit;

s. Causing Diego Pops, LLC to borrow $215,000 from First Bank;

49

Ballard Spahr LLP
1 East Washington Street, Suite 2300
Phoenix, AZ 85004-2555
Telephone: 602.798.5400

t.  Causing Diego Pops, LLC to borrow $200,000 from Marcia Bower, which was repaid in full, but still resulted in Jocque's issuance of a 2.5% ownership interest to Ms. Bower for no reasonably equivalent value; and

u.  Engaging in a payroll scheme for his own benefit across the Business Entities that included payments to phantom employees and to actual employees that lacked the legal ability to work in the United States.

351.  Jocque's pattern of unlawful activity caused Plaintiffs to suffer reasonably foreseeable injury.

352.  Under A.R.S. § 13-2314.04(A), Plaintiffs are entitled to an award of three times the amount of the actual damages caused by Jocque's pattern of unlawful activity, as well as Plaintiffs' reasonable attorneys' fees and costs.

353.  In engaging in the foregoing pattern of unlawful activity, Jocque acted with malice, fraud and oppression, and with a conscious and wanton disregard for the rights and interests of Plaintiffs.

354.  Plaintiffs are therefore entitled to an award of punitive and exemplary damages against Jocque.

355.  WHEREFORE, Plaintiffs pray for judgment against Jocque, as follows:

a.  Finding that Jocque committed violations of A.R.S. § 2314.04, at the expense of Plaintiffs;

b.  Awarding Plaintiffs their damages, including treble damages, pre and post-judgment interest, and attorneys' fees and costs pursuant to A.R.S. § 13-2314.04(A); and

c.  For such other and further relief as the Court may deem just and proper.

### EIGHTEENTH CLAIM FOR RELIEF

### (Accounting/Inspection of Records of the Business Entities)

356.  Plaintiffs incorporate the allegations set forth in paragraphs 1 through 355 of the Complaint as if fully set forth herein.

50

Ballard Spahr LLP
1 East Washington Street, Suite 2300
Phoenix, AZ 85004-2555
Telephone: 602.798.5400

357. Based on the foregoing, Jocque has failed to act consistently with his duties as a manager of the Business Entities with respect to disclosure and/or availability of relevant financial information.

358. Specifically, Jocque has failed to provide complete, true, and accurate financial information, has failed to provide adequate access for inspection, copying, and auditing of the financial records of the Business Entities, and has sought to exclude the Plaintiffs, members of the Business Entities, from matters that concern the operations of the Business Entities.

359. Plaintiffs are entitled to an accounting, inspection, and/or audit of the financial documents and records of the Business Entities.

360. WHEREFORE, Plaintiffs pray for an Order directing an accounting and inspection of the accounting and financial information and records of the Business Entities.

DATED this 9th day of May, 2018.

BALLARD SPAHR LLP

By: _____
Craig S. Ganz
ganzc@ballardspahr.com
Michael DiGiacomo
digiacomom@ballardspahr.com
1 East Washington Street, Suite 2300
Phoenix, AZ 85004-2555
Telephone: 602.798.5400
Facsimile: 602.798.5595
Attorneys for Plaintiffs

51

## VERIFICATION

Chad Landau verifies that he is the manager of Karen Doris, LLC and thus a member of Bridge Entertainment, LLC; BKN Investments, LLC; BKN Real Estate, LLC; Chop Shop Chandler Real Estate, LLC; Diego Pops, LLC; Diego Pops Holdings, LLC (through BKN Investments, LLC): and Scottsdale Road Restaurant, LLC (through BKN Real Estate, LLC) that he is authorized to make this verification, that he has read the foregoing complaint, and that the allegations contained in the same are true and correct to the best of his knowledge, information, and belief, and that as to those matters stated upon information and belief, he believes them to be true.

I verify under penalty of perjury that the foregoing is true and correct. Executed on May 8, 2018.

Chad Landau, individually and as a
manager of Karen Doris, LLC and a
member of Bridge Entertainment, LLC;
BKN Investments, LLC; BKN Real
Estate, LLC; Chop Shop Chandler Real
Estate, LLC; Diego Pops, LLC; Diego
Pops Holdings, LLC (through BKN
Investments, LLC): and Scottsdale Road
Restaurant, LLC (through BKN Real
Estate, LLC).

53

Ballard Spahr LLP
1 East Washington Street, Suite 2300
Phoenix, AZ 85004-2555
Telephone: 602.798.5400

# [EXHIBITS TO EXHIBIT A INTENTIONALLY OMITTED]