**WILENCHIK & BARTNESS**
— A PROFESSIONAL CORPORATION —

ATTORNEYS AT LAW
The Wilenchik & Bartness Building
2810 North Third Street  Phoenix, Arizona  85004

Telephone: 602-606-2810    Facsimile: 602-606-2811

Dennis I. Wilenchik, #005350
Ross P. Meyer, #028473
Jordan C. Wolff, #34110
admin@wb-law.com
*Attorneys for Plaintiff John Moon*

## IN THE SUPERIOR COURT OF THE STATE OF ARIZONA

## IN AND FOR THE COUNTY OF MARICOPA

| | |
|---|---|
| CHAD LANDAU, et. al.,<br><br>Plaintiffs,<br><br>vs.<br><br>RYAN and CAITLIN JOCQUE, husband and wife,<br><br>Defendants. | Case No.: CV2018-007262<br><br>**PLAINTIFF MOON'S PARTIAL MOTION FOR SUMMARY JUDGMENT ON BREACH OF FIDUCIARY DUTY RE DIEGO POPS, LLC**<br><br>(Liability only)<br><br>(Oral Argument Requested)<br><br>(Assigned to the Honorable Daniel G. Martin) |

Plaintiff John Moon ("Moon"), by and through undersigned counsel, files this Partial Motion for Summary Judgment on Breach of Fiduciary Duty re Diego Pops, LLC ("Motion"). Moon requests that the Court enter an order finding that Defendant Ryan Jocque ("Defendant" or "Jocque") breached the fiduciary duties he owed to Moon as a Manager of Diego Pops, LLC and that Moon was damaged.

Moon requests that this Court enter an order determining that Jocque owed a fiduciary duty to Moon with regard to Moon's membership interest in Diego Pops, LLC and that Jocque breached that fiduciary duty. Further, Moon requests that this Court find that even though Moon's exact damages will be determined at trial, Jocque's breach of fiduciary duty is subject to punitive damages and those are appropriate in this circumstance.

This Motion is supported by the following Memorandum of Points and Authorities.

## MEMORANDUM OF POINTS AND AUTHORITIES

The Verified Complaint filed May 9, 2018 ("Complaint"), alleges eighteen different actions against Defendants Ryan and Caitlin Jocque related to the operations and investments in a number of different entities. This Motion is with regard to Count IX—Breach of Fiduciary Duty regarding Diego Pops, LLC.

Diego Pops, LLC, an Arizona limited liability company ("Diego Pops"), was formed on December 18, 2013 and owned by BKN Investments, LLC ("BKN Investments"). *See* Plaintiff Moon's Statement of Facts in Support of Motion for Summary Judgment on Breach of Fiduciary Duty Re Diego Pops, LLC ("SOF"), ¶ 1. At all relevant times, Jocque was a Manager of Diego Pops. SOF, ¶ 2.

On March 1, 2014, Diego Pops' Member and Managers executed an Operating Agreement ("Operating Agreement"). SOF, ¶ 3. As of March 1, 2014, the Managers of Diego Pops were Defendant and Chad Landau ("Landau") and the sole Member was BKN Investments. SOF, ¶¶ 4-5. Under the Operating Agreement, "distributions of Cash Flow shall be made quarterly (or more often as the Managers shall determine), to the Members, *pro rata* in accordance with their respective Percentage Interests." SOF, ¶ 6.

On October 21, 2014, Moon invested $315,000 for a thirty-five (35%) percent membership interest in Diego Pops. SOF, ¶ 7. Diego Pops' attorney, Brooks Holcomb, confirmed this

investment in email dated March 2, 2016. SOF, ¶ 8. Diego Pops provided Moon a 2014 K-1, which confirmed that Moon held a thirty-five (35%) percent membership interest in 2014 for a capital contribution of $315,000. SOF, ¶ 9.

In late 2016 to early 2017, Moon and Defendant began discussing a potential buyout of Moon's interest in Diego Pops. *See* SOF, ¶ 10. On February 15, 2017, Jocque emailed Landau and indicated the terms of Moon's buyout. SOF, ¶ 11. In part, the terms stated that Defendant would buy Moon's thirty-five (35%) percent membership interest in Diego Pops for $315,000—the same number as Moon's investment. SOF, ¶ 11. Moon and Jocque negotiated the terms of Moon's buyout and entered into a Membership Interest Purchase Agreement with Defendant for the sale of his thirty-five (35%) percent membership interest for $332,500 (hereinafter referred to as the "Agreement"). SOF, ¶ 12. The Agreement was not executed until March 20, 2017. SOF, ¶ 13.

Between October 21, 2014 and March 20, 2017, Moon never received a distribution. SOF, ¶ 14. Albeit, on or around February 21, 2017, Jocque caused Diego Pops to issue a distribution to some members ("February Distributions"). SOF, ¶ 15. Despite having a 35% interest in Diego Pops on or around February 21, 2017, Jocque did not issue Moon a distribution. SOF, ¶ 16. The February Distributions were voided at Jocque's direction. SOF, ¶ 17. On March 21, 2017, Diego Pops issued Jocque a distribution in the amount of $70,000. SOF, ¶ 18.[1]

Jocque did not disclose to Moon that distributions were issued and then voided to member(s) on or around February 21, 2017. *See* SOF, ¶ 19. Nor did Jocque disclose that Diego Pops would be issuing distributions to members immediately after Moon's membership interest was purchased by Jocque. *See* SOF, ¶ 20.

---

[1] Jocque and Moon both held a 35% membership interest in Diego Pops prior to March 21, 2017.

Jocque took steps acting as a Member and Manager, by filing insurance documents with Liberty Mutual. *See* SOF, ¶ 21.

## **LEGAL ARGUMENTS**

### I. Jocque Owed Moon a Fiduciary Duty.

Moon was a member of Diego Pops. He invested $315,000 on or around October 21, 2014 and received thirty-five (35) membership interest points. Moon sold his membership interest to Jocque on or around March 20, 2017. Under *In re Sky Harbor Hotel Properties, LLC*, 246 Ariz. 531, 532, ¶¶ 1-2, 443 P.3d 21, 22 (2019), a manager owes a common law fiduciary duty to the company and a member owes a common law fiduciary duty to the company if the member is an agent of the LLC. The Supreme Court held that "[i]f management is vested in one or more managers, by law they are deemed agents of the LLC 'for the purpose of carrying on its business in the usual way.'" *Id*. at 533, ¶ 8, 443 P.3d at 23 (quoting A.R.S. § 29-654(B)(1)). A fiduciary duty has been characterized as "imposing the obligation of loyalty," "the obligation of the utmost good faith in their dealings," and "requiring a high degree of care." *Id*. at ¶ 7. "[T]he nature of the fiduciary relationship for agents includes a duty of loyalty, a duty of good faith, and a duty of care." *Id*.

Here, it is undisputed that Jocque was a manager of the Company and was also an agent of Diego Pops. *See* SOF, ¶¶ 2, 21. Thus, Jocque owed a common law fiduciary duty to Diego Pops and its members— including Moon from October 21, 2014 through March 20, 2017. This fiduciary duty included an obligation of loyalty, the utmost good faith in his dealings with members, and a high degree of care.

### II. Jocque Had a Duty to Disclose That Diego Pops Would Be Issuing Distributions.

The Arizona Supreme Court has held that "liability for nondisclosure occurs under § 551 of the RESTATEMENT (SECOND) OF TORTS and lies against '[o]ne who fails to disclose to

another a fact . . . if, but only if, he is under a duty to the other . . . to disclose the matter in questions." *Wells Fargo Bank v. Ariz. Laborers, Teamsters & Cement Masons Local No. 395 Pension Trust Fund*, 201 Ariz. 474, 496, ¶ 88 n. 22, 38 P.3d 12, 34, n. 22 (2002). The RESTATEMENT (SECOND) OF TORTS § 551 ("Restatement"), provides:

> (1) One who fails to disclose to another a fact that he knows may justifiably induce the other to act or refrain from acting in a business transaction is subject to the same liability as though he had represented the nonexistence of the matter that he has failed to disclose, if, but only if, he is under a duty to the other to exercise reasonable care to disclose the matter in question.
>
> (2) One party to a business transaction is under a duty to exercise reasonable care to disclose to the other before the transaction is consummated,
>   (a) Matters known to him that the other is entitled to know because of a fiduciary or other similar relation of trust and confidence between them; and
>   (b) Matters known to him that he knows to be necessary to prevent his partial or ambiguous statement of the facts from being misleading; and
>   (c) Subsequently acquired information that he knows will make untrue or misleading a previous representation that when made was true or believed to be so; and
>   (d) The falsity of a representation not made with the expectation that it would be acted upon, if he subsequently learns that the other is about to act in reliance upon it in a transaction with him; and
>   (e) Facts basic to the transaction, if he knows that the other is about to enter into it under a mistake as to them, and that the other, because of the relationship between them, the customs of the trade or other objective circumstances, would reasonably expect a disclosure of those facts.

Jocque had a duty to disclose that Diego Pops created and issued distribution checks on or around February 21, 2017. Further, Jocque held a duty to disclose that Diego Pops would be issuing distributions to its members on March 21, 2017. The act of not disclosing this information to Moon, a member of Diego Pops, violates the Restatement and his duty owed to Moon. *Wells Fargo Bank*, 201 Ariz. at 496, ¶ 88, n. 22, 38 P.3d at 34, n. 22.

Generally, in Arizona, a seller or buyer of securities does "not owe a duty to disclose inside information to a shareholder when purchasing that shareholder's stock, so long as the officer or director does not actively mislead the shareholder." *Caruthers v. Underhill*, 230 Ariz. 513, 522, ¶ 34, 287 P.3d 807, 816 (App. 2012); *see Cal X-Tra v. W.V.S.V. Holdings, LLC*, 229 Ariz. 377, 393, ¶ 52, 276 P.3d 11, 27 (App. 2012) ("the fiduciary has a duty to deal fairly, not fraudulently, and to disclose the true facts, not deceive."); *see also In re Estate of Thurston*, 199 Ariz. 215, 219, 16 P.3d 776, 780 (App. 2000) ("Moreover, if a fiduciary who speaks falsely or refuses to reveal the truth also personally profits by his fraudulent conduct, that conduct will justify intervention by the court even in a collateral proceeding."); *see also Nutek Information Systems, Inc. v. Ariz. Corp. Com'n*, 194 Ariz. 104, 110, ¶ 25, 977 P.2d 826, 932 (App. 1998) ("However, when the role of members amounts only to the power to approve the management efforts of a third party . . . the members are no different than shareholders.")."However, if 'special facts' exist, the officer or director has a limited fiduciary duty to disclose facts that affect the value of the stock being purchased." *Id* (quoting *Steinfeld v. Nielsen*, 15 Ariz. 424, 445, 139 P. 879, 888 (1913)). The special facts exception from *Steinfeld* relied on those in *Strong v. Repide*, 213 U.S. 419, 29 S.Ct. 521, 53 L.Ed. 853 (1909). *See Caruthers*, at 522, ¶ 34, 287 P.3d at 816. "*Steinfeld* noted that the special facts in *Strong* were that the purchaser was a director of the corporation, owned seventy-five percent of the company's stock, was the administrator general of the company, and was the chief negotiator for the sale of company lands that would greatly increase the value of the stock." *Id*. "The negotiations for the sale were pending when the purchaser director bought the shares from a shareholder who was not a corporate officer, was not involved in managing the company, and was not involved in the sale of the property." *Id*. "The *Strong* court found that the purchaser director's failure to disclose the pending sale of the company lands constituted fraud." *Id*.

The *Steinfeld* court distinguished the facts of *Strong* "to find no special facts" because the seller in *Steinfeld* "was a director of the company (which was a mining and smelting company), was the superintendent of the mines and the smelter, and had intimate knowledge of the value of the mines and the operation of the smelter." *Caruthers*, at 522, ¶ 35, 287 P.3d at 816. "The court concluded that there were no special facts known to the buyer that were not also known to the seller." *Id*.

Here, there are special facts that are not distinguished as the *Steinfeld* court distinguished *Strong*, namely Jocque was a manager of Diego Pops, Moon was not (Moon was a passive member, SOF, ¶ 21); Jocque had intimate knowledge of the value of Diego Pops, Moon did not; Jocque knew the Company had issued a distribution, Moon did not; and Jocque knew Diego Pops was going to issue a distribution after Jocque acquired Moon's membership interest, Moon did not.

Therefore, even if Jocque did not owe a duty to disclose inside information, here special facts existed, which required disclosure of information that affected the value of Moon's membership interest.

Further, A.R.S. § 44-1991(A)(2) requires that in the purchase or sale of securities, there is an affirmative duty not to mislead. *See also Hirsch v. Arizona Corp. Com'n*, 237 Ariz. 456, 463, ¶ 25, 352 P.3d 925, 932 (App. 2015). "Materiality is based upon an objective standard." *Id.*, at ¶ 27. The requirement of materiality is satisfied by "a showing of substantial likelihood that, under all the circumstances, the misstated or omitted fact would have assumed actual significance in the deliberations of a *reasonable* buyer." *Id*. at 463-64, ¶ 27, 352 P.3d at 932-33 (emphasis in original, internal quotation omitted). "Under this test, there is no need to investigate whether an omission or misstatement was actually significant to a particular buyer." *Id*. at 464, ¶ 27, 352 P.3d at 933. While this statute is specifically dealing with fraud in the purchase of sale or securities, it is

applicable here in the sense of information that is required to be disclosed to a purchaser or seller. *See* A.R.S. §§ 29-602 to -857. Here, Moon has stated that this information would have been significant to him. *See* SOF, ¶¶ 22-23.

### III.     Jocque Breached His Duty to Disclose Information to Moon

Prior to the Agreement, Jocque did not disclose that Diego Pops had planned to issue distribution checks on or around February 21, 2017 or shortly after the Agreement. *See* SOF, ¶ 19. In fact, other members received a Distribution Check, that was later voided, but Moon did not. *See* SOF, ¶¶ 14-17. Per section 4.5.1 of the Operating Agreement, Moon was entitled to receive a distribution of Cash Flow, like the other members, *pro rata* in accordance with his membership interests. Had Moon known this information, he would not have sold his membership interest in Diego Pops, because he would have received distribution(s). *See* SOF, ¶ 22. And he would have *known* that Diego Pops was beginning to operate at a significant level in which it would issue additional distribution checks in the future. *See* SOF, ¶ 23.

This omission and nondisclosure of the foregoing information was a breach of Jocque's fiduciary duties to Moon, as a member of Diego Pops.

### IV.     Jocque's Actions Were the Cause of Moon's Damages

In *Security Title Agency, Inc. v. Pope*, the Arizona Court of Appeals held that an instruction to the jury was appropriate for causation, if the defendant helped "produce the damages and if the damages would not have occurred without the breach." 219 Ariz. 480, 492, ¶ 48, 200 P.3d 977, 989 (App. 2008). Here, Moon would not have sold his shares had Jocque informed him that Diego Pops was successful enough to issue distributions. *See* SOF, ¶ 23. Instead, Moon would have held onto his membership interest, taken distributions, and then decided whether to sell or hold onto his shares as he would have understood Diego Pops had become a substantially profitable business. *See* SOF, ¶¶ 22-23. By failing to disclose the necessary information, Jocque denied

Moon the ability to make that informed decision. Therefore, had Moon been informed, no damages would have occurred from this action, as he would have taken his distribution and held onto his membership interest in Diego Pops.

### V. Damages

In large part, Moon will seek to establish his damages at trial, or at a later stage in this matter as discovery occurs. Without actual financial information regarding Diego Pops' profits after Jocque purchased Moon's membership interest, it is very difficult to establish an amount of damages. However, this section will argue for a summary judgment finding that punitive damages are necessary under this claim.

"In Arizona, punitive damages are awarded only in the most egregious of cases, where it is proved by clear and convincing evidence that the defendant engaged in reprehensible conduct and acted with an evil mind." *Pope*, 219 Ariz. at 498, ¶ 81, 200 P.3d at 995 (internal quotations omitted). "Thus, the critical inquiry is whether an award of punitive damages is appropriate to penalize a party for outwardly aggravated, outrageous, malicious, or fraudulent conduct that is coupled with an evil mind. *Id*. (internal quotations omitted). "A defendant acts with the requisite evil mind when he intends to injure or defraud, or deliberately interferes with the rights of others, consciously disregarding the unjustifiable substantial risk of significant harm to them." *Id*. (internal quotations omitted).

The Arizona Court of Appeals has upheld punitive damages in similar situations to this matter. *See Rhue v. Dawson*, 173 Ariz. 220, 232, 841 P.2d 215, 227 (App. 1992) (for the proposition that punitive damages warranted by evidence defendant deliberately misled and intended to injure plaintiff in breach of fiduciary duty). In *Rhue*, Rhue proposed to Dawson that they form a partnership where Rhue would be the partner with shopping center development expertise and Dawson would be the financial partner, contributing the bulk of capital and

facilitating financing. *Id.* at 223, 841 P.2d at 218. The two formed a partnership, however they did not immediately formalize their partnership in writing, but circulated drafts of an agreement, which was named Shopping Center Enterprises of Arizona. *Id*. Acting on this partnership, Rhue identified two potential properties, which the entity eventually purchased. *Id*. These two properties were separated only by 75th Street in Scottsdale, Arizona, and Rhue and Dawson planned to develop both properties into a unified shopping center. *Id*.

To facilitate the financing, Dawson contacted an appraiser, which provided an "as is" market value appraisal of each property, which was $3,625,000. *Id*. Later, the appraiser provided Dawson with a letter indicating that by combining the properties, their value would be worth $15,625,000. *Id*. Dawson and Rhue estimated the costs of developing and renovating the property at $11,849,580, with a projected profit of $3,775,420, and Rhue being entitled to one-half of the profits at $1,887,710. *Id*. at 223-24, 841 P.2d at 218-219.

Seven days after receiving the combined appraisal, Dawson presented a Joint Venture Agreement for Rhue's signature and pressured him to sign the agreement within a time frame too short to permit Rhue to read the agreement. *Id*. at 224, 841 P.2d at 219. Rhue asked Dawson whether certain changes that were previously discussed and agreed upon were reflected in the Joint Venture Agreement, and Dawson affirmatively replied. *Id*. However, Dawson failed to identify a section that permitted Dawson the unilateral Option to Purchase by merely "returning any capital contribution Rhue had made." *Id*.

The Court of Appeals, in *Rhue*, stated that the jury determined "that Dawson intentionally failed to disclose to Rhue that the agreement contained a buyout provision and that Dawson locked Rhue out of the partnership offices." *Id*. at 226, 841 P.2d at 231. Based on this finding, the Court of Appeals held that a "jury could have found that Dawson thereby breached his fiduciary duty to Rhue by failing to exercise the utmost good faith and by breaching the obligation of loyalty,

fairness and honesty." *Id.* The Court of Appeals went on to state that "deliberate, overt, dishonest dealings will suffice to sustain punitive damages." *Id.* at 227, 841 P.2d at 232.

The *Rhue* court eventually held that because Dawson "deliberately failed to disclose to Rhue that the agreement signed by the parties contained a buyout provision," that he planned to dissolve the partnership, that he locked "Rhue out of the partnership offices and exercised the buyout provision," and that he made "statements suggesting malicious intent," the jury could have inferred that "Dawson's actions were consciously malicious." *Id.* (internal quotation omitted).

Here, Moon invested $315,000 into Diego Pops for a thirty-five (35) point membership interest. *See* SOF, ¶ 7. Jocque wanted Moon's membership interest for himself because he had planned to issue distributions, which he did. Instead of disclosing this information to Moon, he offered Moon limited information and did not disclose his knowledge that distributions were occurring and going to occur. Based on this limited information, Moon could not have surmised that Diego Pops was planning to issue a distribution to its members.

Moon sold his membership interest for a little more than he paid for the points and less than a week after purchasing Moon's membership interest, Jocque issued a distribution to himself in the amount of $70,000. Thus, Jocque did not disclose this information to Moon and acquired Moon's interest for Jocque's own benefit.

Moon did not discover Jocque's February 21, 2017 and March 21, 2017 distribution until after he sold his membership interest to Jocque. *See* SOF, ¶¶ 8-11. Moon is now aware of additional distributions throughout 2017, however as specific damages are not being established in this Motion, those are not discussed herein.

## **CONCLUSION**

For the foregoing reasons, Moon requests that this Court enter an order determining that Jocque owed a fiduciary duty to Moon with regard to Moon's membership interest in Diego Pops

and that Jocque breached that fiduciary duty. Further, Moon requests that this Court find that even though Moon's exact damages will be determined at trial, Jocque's breach of fiduciary duty is subject to punitive damages and those are appropriate in this circumstance.

**RESPECTFULLY SUBMITTED** this 16th day of January, 2020.

**WILENCHIK & BARTNESS, P.C.**

*/s/ Ross P. Meyer*
Dennis I. Wilenchik, Esq.
Ross P. Meyer, Esq.
Jordan C. Wolff, Esq.
The Wilenchik & Bartness Building
2810 North Third Street
Phoenix, Arizona 85004
admin@wb-law.com
*Attorneys for Plaintiff John Moon*

**ELECTRONICALLY** filed January 16, 2020,
via AZTurboCourt.com

**COPY** electronically transmitted by the Clerk of
the Court via AZTurboCourt.com
to the Daniel G. Martin

**COPIES** electronically served January 16, 2020, using AZTurboCourt.com, to:

William G. Klain, Esq.
Michelle H. Swann, Esq.
LANG & KLAIN, P.C.
6730 N. Scottsdale Road, Suite 101
Scottsdale, Arizona 85253-4408
wklain@lang-klain.com
MSwann@lang-klain.com
filing@lang-klain.com
*Attorneys for Defendants*

Robert T. Mills, Esq.
Sean A. Woods, Esq.
Mills + Woods, PLLC
5055 North 12th Street, Suite 101
Phoenix, Arizona 85014
docket@millsandwoods.com
*Attorneys for Plaintiff D2W, LLC*

**COPY** emailed on January 16, 2020, to:

Chad Landau, for himself
and for Karen Doris, LLC
1412 Copper Trace
Cleveland Heights, Ohio 44118
Chad.m.landau@gmail.com

*/s/ Christine M. Ferreira*