**WILENCHIK & BARTNESS**
A PROFESSIONAL CORPORATION

ATTORNEYS AT LAW

The Wilenchik & Bartness Building
2810 North Third Street  Phoenix, Arizona  85004

Telephone:  602-606-2810          Facsimile:  602-606-2811

Dennis I. Wilenchik, #005350
Ross P. Meyer, #028473
Jordan C. Wolff, #34110
admin@wb-law.com
*Attorneys for Plaintiff John Moon*

## IN THE SUPERIOR COURT OF THE STATE OF ARIZONA

## IN AND FOR THE COUNTY OF MARICOPA

| | |
|---|---|
| CHAD LANDAU, et. al., <br><br> Plaintiffs, <br><br> vs. <br><br> RYAN and CAITLIN JOCQUE, husband and wife, <br><br> Defendants. | Case No.: CV2018-007262 <br><br> **PLAINTIFF MOON'S STATEMENT OF FACTS IN SUPPORT OF PARTIAL MOTION FOR SUMMARY JUDGMENT ON BREACH OF FIDUCIARY DUTY RE DIEGO POPS, LLC** <br><br> **(Assigned to the Honorable Daniel G. Martin)** |

Plaintiff, John Moon (hereinafter referred to as "Moon"), present the following facts in support of his Partial Motion for Summary Judgment on Breach of Fiduciary Duty Re Diego Pops, LLC.

1.       Diego Pops, LLC, is an Arizona limited liability company ("Diego Pops") that was formed on December 18, 2013 and owned by BKN Investments, LLC ("BKN Investments"). *See* Articles of Organization filed with the Arizona Corporation Commission on December 18, 2013, a true and correct copy is attached hereto as **Exhibit 1**.

2.       Jocque was a Manager of Diego Pops. *See* **Exhibit 1**.

3.     On March 1, 2014, Diego Pops' Members and Managers executed an Operating Agreement ("Operating Agreement"). *See* March 1, 2014 Operating Agreement, a true and correct copy is attached hereto as **Exhibit 2**.

4.     As of March 1, 2014, the Managers of Diego Pops were Ryan Jocque ("Defendant") and Chad Landau ("Landau"). *See* **Exhibit 2**, at 4 (§ 2.30).

5.     The sole Member was BKN Investments. *See* Exhibit A to **Exhibit 2**, at 43.

6.     Under Section 4.5.1 of the Operating Agreement "distributions of Cash Flow shall be made quarterly (or more often as the Managers shall determine), to the Members, *pro rata* in accordance with their respective Percentage Interests." *See* **Exhibit 2**, at 11 (§ 4.5.1).

7.     On October 21, 2014 Moon invested $315,000 into Diego Pops in return for a thirty-five (35%) percent membership interest. *See* JP Morgan Chase, N.A. Bank Statement for Diego Pops' Account Ending in 3293 for the period beginning October 1, 2014 and ending October 31, 2014, a true and correct copy is attached hereto as **Exhibit 3**; *see also* Email from Brooks Holcomb to Norma Dinh, dated March 2, 2016, a true and correct copy attached is hereto as **Exhibit 4**; *see also* Diego Pops' K-1 for the Tax Year 2014 Relating to Moon, a true and correct copy is attached hereto as **Exhibit 5**.

8.     Diego Pops' attorney, Brooks Holcomb, confirmed this investment in email dated March 2, 2016. **Exhibit 4**, *see also* Defendants' Initial Disclosure Statement, page 27, attached hereto as **Exhibit 12** (stating "Mr. Holcomb has been involved with the various Business Entities at all relevant to this dispute, including as general counsel." Business Entities is defined on page 3 and 4 of the Initial Disclosure Statement, which includes Diego Pops, LLC.); *see also* **Exhibit 1** (Brooks Holcomb signed the Articles of Organization for Diego Pops on behalf of the statutory agent, which is the "law firm of Brooks J. Holcomb, PLLC, an Arizona limited liability company . . . .").

9. Diego Pops provided Moon a 2014 Tax Return, which stated that he held a thirty-five (35%) percent membership interest in 2014 for a capital contribution of $315,000. **Exhibit 5**.

10. In late 2016 to early 2017, Moon and Defendant began discussing a potential buyout of Moon's interest in Diego Pops. *See* Declaration of John Moon, dated December 16, 2019, attached hereto as **Exhibit 6**, ¶ 4.

11. On February 15, 2017, Jocque emailed Landau and told him to have Moon agree to the terms presented, which were an immediate buyout of Moon's Diego Pops equity at the "original price invested." *See* Email from Jocque to Landau dated February 15, 2017, attached hereto as **Exhibit 7**.

12. Moon and Jocque negotiated the terms of Moon's buyout and entered into a Membership Interest Purchase Agreement with Defendant for the sale of his thirty-five (35%) percent membership interest for $332,500 (hereinafter referred to as "Agreement"). *See* Membership Interest Purchase Agreement, dated March 15, 2017, a true and correct copy is attached hereto as **Exhibit 8**; *see also* **Exhibit 6**, ¶ 5.

13. The Agreement was not executed until March 20, 2017. **Exhibit 8**, at 2.

14. During the time Moon was a member of Diego Pops, he never received a distribution. *See* **Exhibit 6**, at ¶ 6.

15. On or around February 21, 2017, Diego Pops issued a distribution to some members. *See* Declaration of Chad Landau, dated December 3, 2019, attached hereto as **Exhibit 9**, ¶ 4.

16. Moon did not receive a distribution from Diego Pops on or around February 21, 2017. **Exhibit 6**, ¶ 7.

17. The February Distributions were voided at Jocque's direction. **Exhibit 9**, ¶ 5.

18. On March 21, 2017, Diego Pops issued Jocque a distribution in the amount of $70,000. *See* JP Morgan Chase, N.A. Bank Statement for Diego Pops' Account Ending in 3293

for the period beginning March 1, 2017 and ending March 31, 2017 with copy of Check Number 2857 dated March 21, 2017, a true and correct copy is attached hereto as **Exhibit 10**.

19.     Jocque did not disclose to Moon that distributions were issued and then voided on or around February 21, 2017. **Exhibit 6**, at ¶ 8.

20.     Jocque did not disclose that Diego Pops would be issuing distributions to members immediately after Moon's membership interest was purchased. *See* **Exhibit 6**, at ¶ 9.

21.     Jocque took steps acting as a Member and Manager, by filing insurance documents with Liberty Mutual. *See* Liberty Mutual Insurance Report dated November 30, 2015, a true and correct copy is attached hereto as **Exhibit 11**.

22.     Had Moon known that Diego Pops planned to issue distribution checks, he would not have sold his membership interest in Diego Pops, because he would have received a significant distribution. *See* **Exhibit 6**, at ¶ 10.

23.     Had Moon known that Diego Pops was successful enough to issue distributions, Moon would have held onto his membership interest, taken distributions, and then decided to sell or hold onto his membership interest as he would have understood Diego Pops had become a substantially profitable business. *See* **Exhibit 6**, at ¶ 11.

        **RESPECTFULLY SUBMITTED** this 16th day of January, 2020.

                                **WILENCHIK & BARTNESS, P.C.**

                                */s/ Ross P. Meyer*
                                Dennis I. Wilenchik, Esq.
                                Ross P. Meyer, Esq.
                                Jordan C. Wolff, Esq.
                                The Wilenchik & Bartness Building
                                2810 North Third Street
                                Phoenix, Arizona 85004
                                admin@wb-law.com
                                *Attorneys for Plaintiff John Moon*

**ELECTRONICALLY** filed January 16, 2020, via AZTurboCourt.com

**COPY** electronically transmitted by the Clerk of the Court via AZTurboCourt.com to the Daniel G. Martin

**COPIES** electronically served January 16, 2020, using AZTurboCourt.com, to:

William G. Klain, Esq.
Michelle H. Swann, Esq.
LANG & KLAIN, P.C.
6730 N. Scottsdale Road, Suite 101
Scottsdale, Arizona 85253-4408
wklain@lang-klain.com
MSwann@lang-klain.com
filing@lang-klain.com
*Attorneys for Defendants*

Robert T. Mills, Esq.
Sean A. Woods, Esq.
Mills + Woods, PLLC
5055 North 12th Street, Suite 101
Phoenix, Arizona 85014
docket@millsandwoods.com
*Attorneys for Plaintiff D2W, LLC*

**COPY** emailed on January 16, 2020, to:

Chad Landau, for himself
and for Karen Doris, LLC
1412 Copper Trace
Cleveland Heights, Ohio 44118
Chad.m.landau@gmail.com

 /s/ Christine M. Ferreira