

**WILENCHIK & BARTNESS**
A PROFESSIONAL CORPORATION

ATTORNEYS AT LAW
The Wilenchik & Bartness Building
2810 North Third Street  Phoenix, Arizona  85004

Telephone: 602-606-2810    Facsimile: 602-606-2811

Dennis I. Wilenchik, #005350
Ross P. Meyer, #028473
Jordan C. Wolff, #034110
admin@wb-law.com
*Attorneys for Plaintiff John Moon*

### IN THE SUPERIOR COURT OF THE STATE OF ARIZONA
### IN AND FOR THE COUNTY OF MARICOPA

| | |
|---|---|
| CHAD LANDAU, et. al.,<br><br>**Plaintiffs,**<br><br>vs.<br><br>RYAN and CAITLIN JOCQUE, husband and wife,<br><br>**Defendants.** | Case No.: CV2018-007262<br><br>**PLAINTIFF MOON'S OBJECTIONS TO DEFENDANTS' CONTROVERTING STATEMENT OF FACTS IN SUPPORT OF RESPONSE**<br><br>(Assigned to the<br>Honorable Daniel G. Martin) |

Pursuant to Rules 56(c)(3)(B) and (c)(4) of the Arizona Rules of Civil Procedure, Plaintiff John Moon (hereinafter referred to as "Moon"), submit objections to Defendants Ryan and Caitlin Jocque's Controverting Statement of Facts ("Jocque's SOF") in support of their Response to Moon's Partial Motion for Summary Judgment on Breach of Fiduciary Duty re Diego Pops, LLC ("Response").

| Jocque's SOF | Moon's Objections/Response |
|---|---|
| 1. Diego Pops has always been a manager-managed Arizona limited liability company. | Undisputed for purposes of Moon's Reply. |

| | |
|---|---|
| *See* Diego Pops Articles of Organization, **Exhibit 1** to Moon's SOF. | |
| 2. Diego Pops' Managers are Ryan Jocque and Chad Landau, who are vested with broad discretion in the Operating Agreement. *See* Diego Pops Articles of Organization, **Exhibit 1** to Moon's SOF; *see generally* Operating Agreement of Diego Pops, LLC, **Exhibit 2** to Moon's SOF. | Undisputed for purposes of Moon's Reply; however, the term "broad" is not included in the Operating Agreement. Instead, the authorization states that "[e]xcept for situations in which the approval of the Members is expressly required by this Agreement or by non-waivable provisions of applicable law, the consent of two (2) Managers shall be sufficient to make any and all decisions and to do any and all things which the Managers deem to be reasonably required to accomplish the business and objectives of the Company and shall direct, manage and control the business of the Company to the best of their ability." SOF, **Exhibit 2** at § 5.1 (page 13). |
| 3. Section 4.6.1 of the Diego Pops' Operating Agreement provides the following:<br>**Form of Distribution**. In connection with any distribution, no Interest Holder shall have the right to receive Property other than cash except as may be specifically provided herein. If any Property is distributed in kind to the Interest Holders, such Property shall be valued on the basis of its fair market value, and any Interest Holder entitled to such Property shall receive its share as a tenant-in-common with all other Interest Holders so entitled. Unless the Interest Holders otherwise agree, the fair market value of such Property shall be determined by an independent appraiser who shall be selected by the Managers.<br>*See* Operating Agreement of Diego Pops, LLC, **Exhibit 2** to Moon's SOF, page 12. | Undisputed for purposes of Moon's Reply. |
| 4. Section 5.1 of the Diego Pops' Operating Agreement provides the following:<br>**Management**. The business and affairs of the Company shall be managed exclusively by its designated Managers, who may hire a management company to handle the Company's day-to-day operations, as set forth | Undisputed for purposes of Moon's Reply. |

| | | |
|---|---|---|
| | in Section 5.15 below. Except for situations in which the approval of the Members is expressly required by this Agreement or by non-waivable provisions of applicable law, the consent of two (2) Managers shall be sufficient to make any and all decisions and to do any and all things which the Managers deem to be reasonably required to accomplish the business and objectives of the Company and shall direct, manage and control the business of the Company to the best of their ability. No Member, in his capacity as a Member, shall have the authority to act for or bind the Company.<br>*See* Operating Agreement of Diego Pops, LLC, **Exhibit 2** to Moon's SOF, page 13. | |
| | 5. Section 4.5.1 of the Diego Pops' Operating Agreement provides the following:<br><u>Distributions of Cash Flow</u>. Except as provided in <u>Sections 4.5.2</u> (in connection with a Tax Distribution) or <u>Section 9.2</u> (in connection with the dissolution of the Company), distributions of Cash Flow shall be made quarterly (or more often as the Managers shall determine), to the Members, *pro rata* in accordance with their respective Percentage Interests.<br>*See* Operating Agreement of Diego Pops, LLC, **Exhibit 2** to Moon's SOF, page 11. | Undisputed for purposes of Moon's Reply. |
| | 6. Section 2.12 of the Diego Pops' Operating Agreement provides the following:<br>2.12 "<u>Cash Flow</u>" means, with respect to any period, the Company's gross cash receipts derived from any source whatsoever (not include Capital Contributions), reduced by the portion thereof used to pay or establish reasonable reserves for all Company expenses, including, but not limited to, debt payments and accrued interest, contingencies, proposed acquisitions and payment of indemnities pursuant to the provisions of this Agreement, *all as reasonably determined by the Manager* pursuant to <u>Article Five</u>. Cash Flow shall not | Undisputed for purposes of Moon's Reply. |

| | |
|---|---|
| be reduced by depreciation, amortization, cost recovery deductions, or similar allowances. *See* Operating Agreement of Diego Pops, LLC, **Exhibit 2** to Moon's SOF, page 3 (emphasis added). | |
| 7. Section 1.3 of the Diego Pops' Operating Agreement provides the following: **Purpose**. The initial purpose and business of this Company shall be to hold and manage a restaurant. The Company shall have the power to do any and all acts and things related to the furtherance of such purpose. The Company may engage in other businesses only upon the unanimous approval of the Managers. *See* Operating Agreement of Diego Pops, LLC, **Exhibit 2** to Moon's SOF, page 1. | Undisputed for Purposes of Moon's Reply. |
| 8. The ultimate cost of the Diego Pops construction buildout was at least $735,990.30, which was comprised of the following figures: <br><br> | Leasehold Improvements | $590,664.29 | <br> | Equipment | $50,868.94 | <br> | Furniture and Fixtures | $81,975.11 | <br> | Signage | $10,325.28 | <br> | Computers | $1,406.82 | <br> | Artwork | $749.86 | <br><br> *See* Declaration of Ryan Jocque, attached as **Exhibit A**, ¶ 2. | Objection, relevance. The issue regarding the cost of construction is not the subject of the distribution, which is the subject of the Motion. <br><br> This representation is a material fact to the action, which is being investigated and the subject of discovery. A summary chart, with no supporting documentation is insufficient to produce this evidence. *See* Ariz. R. Evid., R. 1002 ("An original writing, recording, photograph, or video is required to prove its content unless these rules or an applicable statute provides otherwise,"). |
| 9. The Diego Pops construction buildout was completed in or about November 2014, and Diego Pops opened its doors and began restaurant operations shortly thereafter. *See* **Exhibit A**, ¶ 3. | Undisputed for purposes of Moon's Reply. |
| 10. On or about March 21, 2017, Diego Pops had approximately $188,000.00 in available cash, and liabilities of approximately $266,618.00. Of these liabilities, they were comprised of approximately $229,700.00 in loans, and $37,915.00 in accounts payable. *See* **Exhibit A, ¶ 4**. | Objection, Defendant has failed to support this statement with any financial information. *See* Ariz. R. Evid., R. 1002 ("An original writing, recording, photograph, or video is required to prove its content unless these rules or an applicable statute provides otherwise."). |

| | |
|---|---|
| 11. In January 2017, Chad Landau and John Moon approached Ryan Jocque about purchasing a controlling interest in another restaurant; those discussions contemplated a potential swap of a membership interest that Jocque owned in that other restaurant for Moon's membership interest in Diego Pops. *See* **Exhibit A**, ¶ 5. | Undisputed for purposes of Moon's Reply. |
| 12. Because of these ongoing discussions, Jocque and Landau, as Managers determined that Diego Pops would not make distributions or large purchases at that time. *See* **Exhibit A**, ¶ 6. | Undisputed for purposes of Moon's Reply. However, Moon objects to this statement as it is unsupported by evidence from Chad Landau or documentation regarding a determination by the Managers of Diego Pops, such as a resolution or some other form of memorialization. *See* Ariz. R. Evid., R. 1002 ("An original writing, recording, photograph, or video is required to prove its content unless these rules or an applicable statute provides otherwise."). Further even if the Managers could make this determination, the Operating Agreement requires a decision such as this to be reduced to writing in some form. *See* SOF, **Exhibit 2** at § 5.3 ("The affirmative vote of two (2) of the Managers present at a meeting, including a meeting by a conference telephone, shall be the act of the Managers. Each Manager may act without a meeting if the action taken is reduced to writing and approved and signed by another Manager."); *see also* SOF, **Exhibit 2** at § 5.3.2 (if there was a meeting, it would have to have been noticed via a writing "Written notice setting the time, date and place of the meeting and the purpose or purposes for which the meeting is called shall be delivered to each Manager . . . ."). <br><br> However, despite this determination, Jocque issued distributions during this time. *See* Jocque's Obj. to SOF, ¶ 15. Jocque is inconsistent in that there was an alleged agreement to not make distributions, but then he did make distributions. |

| | | |
|---|---|---|
| 1 2 3 | 13. John Moon engaged counsel to assist him in this negotiation and subsequent transactions. *See* Email between Chad Landau and Adam Trenk*, et al*, last dated March 10, 2017, attached hereto as **Exhibit B**. | Disputed. Adam Trenk did not represent Moon, nor did Moon have counsel with regard to the Diego Pops' Transaction, which is the subject of this Motion. *See* Second Declaration of John Moon, ¶¶ 5-6. |
| 4 5 6 7 8 9 10 11 12 | 14. Moon's counsel and accountant had been granted access to the books and financial records of Diego Pops and the other restaurant for auditing purposes in 2016. *See* Email thread between Chad Landau, Ryan Jocque, Mindi Osborn, *et al*, last dated March 18, 2016, attached hereto as **Exhibit C**. | Undisputed for purposes of Moon's Reply. It is further noted that this was in 2016, not 2017 when the February 21, 2017 distributions were made. In addition, even if Moon had access to the books and records in 2016, a distribution is to be determined quarterly, by the manager. SOF, **Exhibit 2** at § 4.5.1 ("distribution of Cash Flow shall be made quarterly . . ."); *see also* SOF, **Exhibit 2** at § 2.12 (Cash Flow is the "Company's gross cash receipts derived from any source whasoever (not including Capital Contriubtions), reduced by the portion thereof used to pay or establish reasonable reserves for all Company expenses . . . , all as reasonabley determined by the Manager pursuant to Article Five."). |
| 13 14 15 | 15. On February 1, 2017, Moon sent Landau an email proposing to further those discussions. *See* Email between John Moon and Chad Landau, dated February 1, 2017, and attached hereto as **Exhibit D**. | Undisputed for purposes of Moon's Reply. |
| 16 17 18 19 20 21 | 16. In that email, Moon sought additional financial information from Landau regarding Diego Pops and the other restaurant interest. *See* **Exhibit D**. | The email attached as Exhibit D is undisputed for purposes of Moon's Reply. However, the email shows that Moon sought additional financial information from the Diego Pops' managers, Jocque and Landau, not simply Landau. *See* Jocque's Controverting SOF, at Exhibit D ("[Jocque] needs to explain . . . "; "I do want you to ask [Jocque] to give me the check register and the operating check register to follow this from start to finish!"). |
| 22 23 24 25 | 17. Landau sent multiple emails to Moon between August 2016 and March 2017 and beyond that revealed the sales figures for Diego Pops and the other restaurant. A sampling of these emails is included in the attached **Exhibits E-W**, listed here. (Table is not presented in this document). | Undisputed for purposes of Moon's Reply. |

| | |
|---|---|
| 18. Jocque and Landau had anticipated making the first distribution for Diego Pops in 2017; however, distribution checks were cut but not cashed because negotiations with Moon were stalling and Jocque informed Landau that, once the distributions were made, he would not continue negotiating with Moon. *See* **Exhibit A**, ¶ 7. | Disputed. On or around February 21, 2017, Diego Pops *issued* a distribution to some members. SOF, ¶ 15; *compare* Jocque's CSOF, ¶ 15. This statement conflicts with Jocque's CSOF, ¶ 12. Jocque has already stated that there was a purported agreement between Jocque and Landau not to issue distributions or make large purchases while negotiating with Moon. Jocque's CSOF, ¶ 12. Now, Jocque is stating that that distributions were cut, while negotiations were ongoing. |
| 19. In or around February 2017, Moon informed Jocque – and Landau affirmed – that Moon needed to cash out his membership interest in Diego Pops because Moon needed funds for an investment in Texas. *See* **Exhibit A** at ¶ 8. | Disputed. *See* Second Declaration of John Moon, ¶¶ 7-8. |
| 20. John Moon proposed a purchase price for the sale of his membership interest as the amount of his original contribution. *See* **Exhibit A**, ¶ 9; *see also* email thread between Ryan Jocque and Chad Landau, last dated February 15, 2017, attached as **Exhibit X**. | Disputed. *See* Second Declaration of John Moon, ¶ 9. Further, **Exhibit X** does not show that Moon proposed a purchase price for the sale of his membership interest as the amount of his original contribution. *See* Jocque's CSOF, **Exhibit X**. |
| 21. Moon was represented by counsel throughout the Diego Pops membership-interest transaction, with Landau apparently acting as intermediary between Moon and Moon's counsel. *See* **Exhibit B**; **Exhibit A**, ¶ 10. | Disputed. Moon disputes that he was represented by counsel for the Diego Pops membership interest transaction. *See* Second Declaration of John Moon, ¶ 6. Further, the email attached as Exhibit B to Jocque's Obj. to SOF, was Landau's attorney, not Moon's. *See* Second Declaration of John Moon, ¶ 5. |
| 22. In Initial Disclosure Statement, Moon stated the following, "As of March of 2017, Diego Pops, LLC had never, since its inception, issued a dividend or distribution to any of its members." *See* Plaintiff John Moon's Initial Disclosure Statement, the relevant excerpt of which is attached as **Exhibit Y**. | Undisputed for purposes of Moon's Reply. |
| 23. Diego Pops made *pro rata* distributions to each of its members, including Ryan Jocque and several of the Plaintiff Business Entities, shortly following Moon's sale of his interest in | Undisputed for purposes of Moon's Reply. It should be noted that Jocque issued a distribution to himself for $70,000 one day after he purchased Moon's membership |

| Diego Pops on March 20, 2017. *See* **Exhibit A**, ¶ 11. | interest. *See* Jocque's Objections to SOF, ¶ 18; *see also* SOF, ¶ 18. |



**RESPECTFULLY SUBMITTED** this 3rd day of April, 2020.

**WILENCHIK & BARTNESS, P.C.**

*/s/ Ross P. Meyer*
Dennis I. Wilenchik, Esq.
Ross P. Meyer, Esq.
Jordan C. Wolff, Esq.
The Wilenchik & Bartness Building
2810 North Third Street
Phoenix, Arizona 85004
admin@wb-law.com
*Attorneys for Plaintiff John Moon*

**ELECTRONICALLY** filed this 3rd day of April, 2020 via AZTurboCourt.com.

**COPY** e-served this 3rd day of April, 2020, to:

William G. Klain
Michelle Swann
Lang & Klain, P.C.
6730 N. Scottsdale Road, Suite 101
Scottsdale, Arizona 85253-4408
filing@lang-klain.com
*Attorneys for Defendants*

Chad Landau, for himself
and for Karen Doris, LLC
1412 Copper Trace
Cleveland Heights, Ohio 44118
chad.m.landau@gmail.com

 */s/ Ross P. Meyer*

DocuSign Envelope ID: 9F4B2AAE-FE17-4B6E-BAC2-56D38C9A6B0B

**WILENCHIK & BARTNESS**
— A PROFESSIONAL CORPORATION —

ATTORNEYS AT LAW
The Wilenchik & Bartness Building
2810 North Third Street  Phoenix, Arizona  85004

Telephone: 602-606-2810     Facsimile: 602-606-2811

Dennis I. Wilenchik, #005350
Ross P. Meyer, #028473
Jordan C. Wolff, #034110
admin@wb-law.com
*Attorneys for Plaintiff John Moon*

# IN THE SUPERIOR COURT OF THE STATE OF ARIZONA
# IN AND FOR THE COUNTY OF MARICOPA

| | |
|---|---|
| CHAD LANDAU, et. al., <br><br> **Plaintiffs,** <br><br> vs. <br><br> RYAN and CAITLIN JOCQUE, husband and wife, <br><br> **Defendants.** | Case No.: CV2018-007262 <br><br> **SECOND DECLARATION OF JOHN MOON** <br><br> (Assigned to the Honorable Daniel G. Martin) |

I, John Moon, make this Declaration of my own knowledge and I am competent to testify to the matters contained herein.

1. I, John Moon, am over 18 years of age.

2. I forwarded Chad Landau the email, which is included in Exhibit B to Jocque's Controverting Statement of Facts, on March 9, 2017.

3. Adam Trenk is an attorney at Rose Law Group, P.C.

4. I have never met Adam Trenk, personally.

5. I understand that Adam Trenk was Chad Landau's attorney for a number of legal issues. Adam Trenk did not and has not ever represented me with regards to Diego Pops, LLC.

6. I did not have legal representation in the transaction of selling my Diego Pops membership interest.

7. I informed Chad Landau that he needed to make payment on an unrelated promissory note between me and Landau, due to an investment in Texas.

8. I did not tell Landau that I needed to cash out my interest in Diego Pops for an investment in Texas.

9. I did not propose a purchase price of my Diego Pops' membership interest as the amount of my original contribution. Instead, Ryan Jocque told me that my membership interest is worth my original contribution price.

10. I declare under penalty of perjury that the foregoing is true and correct.

**EXECUTED** on  4/3/2020 _____.

_____
John Moein

DocuSigned by: [signature]
EA1AC6F4B4194A9...