**WILENCHIK & BARTNESS**
— A PROFESSIONAL CORPORATION —

ATTORNEYS AT LAW
The Wilenchik & Bartness Building
2810 North Third Street  Phoenix, Arizona  85004

Telephone: 602-606-2810    Facsimile: 602-606-2811

Dennis I. Wilenchik, #005350
Ross P. Meyer, #028473
Jordan C. Wolff, #034110
admin@wb-law.com
*Attorneys for Plaintiff John Moon*

## IN THE SUPERIOR COURT OF THE STATE OF ARIZONA
## IN AND FOR THE COUNTY OF MARICOPA

| | |
|---|---|
| CHAD LANDAU, et. al.,<br><br>**Plaintiffs,**<br>vs.<br><br>RYAN and CAITLIN JOCQUE, husband and wife,<br><br>**Defendants.** | Case No.: CV2018-007262<br><br>**PLAINTIFF MOON'S RESPONSE TO DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT AS TO COUNTS FOUR AND FIVE TO THE EXTENT ALLEGED BY PLAINTIFF JOHN MOON**<br><br>**(Assigned to the Honorable Daniel G. Martin)**<br><br>**(Oral Argument Requested)** |

Plaintiff, John Moon (hereinafter referred to as "Moon" or "Plaintiff"), responds to Defendants' Motion for Partial Summary Judgment as to Counts Four and Five to the Extent Alleged by Plaintiff John Moon (the Defendant's motion is herein referred to as "Motion" and this response is referred to as the "Response"). This Memorandum of Points and Authorities, Controverting Statement of Facts ("CSOF"), and Plaintiff's Separate Statement of Facts ("PSOF") and exhibits attached thereto support this Response.

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. STATEMENT OF FACTS

Plaintiff, John Moon is 64 years old and holds a Bachelor of Science in Petroleum Engineering from Mississippi State University. PSOF, ¶ 1. He has spent his adult life drilling for oil throughout the southern part of the United States and is a registered Petroleum Engineer in the state of Texas. PSOF, ¶¶ 2-3. Moon did very well in his oil ventures and was fortunate to accumulate independent wealth.[1] PSOF, ¶ 4. Like many financially successful Americans, Moon sought to strategically invest his money. Moon was also old fashioned and believed that a man's word and handshake was their bond. PSOF, ¶ 6.

Moon met Chad Landau in or around 2010. PSOF, ¶ 7. Moon became a member of BKN Management from its beginning stages. PSOF, ¶ 8. Defendant Ryan Jocque ("Jocque") was a member and one of the managers of Chop Shop's holding company, BKN Management, LLC. PSOF, ¶¶ 9, 11. In 2012, Moon was introduced to a ground level opportunity to invest in a new restaurant concept—Original Chop Shop Co. ("Chop Shop"). PSOF, ¶ 10. BKN Management was to take the lead in the development of the Chop Shop concepts. PSOF, ¶ 11.

Subsequently, BKN Management started its first two Chop Shop concepts in Scottsdale and Tempe in 2012 and 2013, respectively. PSOF, ¶¶ 12-13. Shortly thereafter, BKN Management wanted Chop Shop to establish its Flagship store because they believed they could grow the concept. PSOF, ¶ 14. Jocque found a building, located at 35 W. Boston Avenue, Chandler, Arizona 85225 (the "Property") that would be Chop Shop's Flagship store. PSOF, ¶ 15.

Although, Jocque located the ideal building, the Property, BKN Management, did not have the capital to purchase the Property. PSOF, ¶ 16. Jocque, knowing Moon's wealth, presented Moon with an opportunity to fund the purchase of the Property. PSOF ¶ 17. The opportunity

---

[1] Moon decided to retire in Cabo San Lucas, Mexico ("Cabo"), and even though he had a residence in Scottsdale, Arizona, Moon spent a majority of his time in Cabo. PSOF, ¶ 5.

presented was that Moon would invest $370,000 to purchase the Property. PSOF, ¶ 17. In return, Moon would be repaid his $370,000 with ten percent (10%) interest (the $370,000 with ten percent (10%) interest is referred to as the "Loan") and Moon would also get a membership interest ("Membership Interest") in the in CS Chandler Real Estate, LLC ("CSCRE")—the entity that would purchase and own the Property. PSOF, ¶ 17. CSCRE told Moon that after it purchased the Property, it would receive a traditional loan from a bank, based on the value of the Property, and repay the Loan to Moon. PSOF, ¶ 18. Jocque told Moon that he would receive a forty (40%) percent membership interest in CSCRE, and that Landau would be permitted to purchase half of Moon's CSCRE membership interest. PSOF, ¶ 19.

Based on their previous dealings and believing Jocque to be a man of his word, Moon believed that Jocque would provide him his membership interest once the Property was purchased. PSOF ¶ 20. Thus, Moon did not request or execute a contribution agreement or any other document regarding the Membership Interest or Loan. PSOF, ¶ 21.

On August 16, 2013, Moon deposited $370,000 into escrow for the purchase of the Property. PSOF, ¶ 22 On the same date, CSCRE purchased the Property. PSOF, ¶ 23. After purchasing the Property, CSCRE received a traditional loan on the Property. PSOF ¶ 24. However, despite CSCRE's representations about Moon being paid back after receiving a traditional loan on the Property, Moon did not receive a payment for the Loan until June 9, 2014.[2] PSOF ¶ 25.

After waiting nearly a year to be repaid the Loan, Moon, understandably, became extremely frustrated and just wanted his loan completely paid off. PSOF, ¶ 29. However, despite taking a traditional loan out on the Property, CSCRE did not have the cash to payback Moon the remaining balance of the Loan. PSOF ¶ 30. In an email, dated July 16, 2014, from Chad Landau,

---

[2] The first payment was in the amount of $50,000 on June 9, 2014. PSOF, ¶ 26. On June 11, 2014, CSCRE made another $50,000 payment. PSOF, ¶ 27. On July 1, 2014, CSCRE paid Moon another $55,000. PSOF, ¶ 28.

Jocque's business partner and co-manager of CSCRE, told Moon that he was going to be paid back the remaining principal, which at the was at least $215,000, plus interest. PSOF, ¶ 31. However, months went by and Moon had still not been paid back the remaining balance of the Loan. PSOF, ¶ 32. In fact, Moon did not receive any additional payments towards the Loan after July 1, 2014. PSOF, ¶ 33.

After months of frustration and not receiving a payment for four (4) months, in October 2014, Jocque and Moon went to dinner at Mastro's City Hall in Scottsdale, Arizona to discuss the remaining balance of the Loan. PSOF, ¶ 34. At the dinner, Jocque offered Moon membership interest in Jocque's new restaurant concept in exchange for the amount owed on the Loan. PSOF ¶ 35. Appearing that Jocque's offer was the only immediate way for Moon to receive something for the amount owed under the Loan, Moon agreed to Jocque's offer. PSOF, ¶ 36. Moreover, Jocque told Moon that he was never issued a membership interest in CSCRE. PSOF, ¶ 37. With nothing to show otherwise, Moon accepted Jocque's representations that Moon never had an interest in CSCRE. PSOF ¶ 38.

As part of this exchange for the remaining balance of the Loan, Moon was credited $253,000 as a capital contribution to Bridge Entertainment, which equated to a twenty-five (25%) percent membership interest. PSOF ¶ 39. In March 2017, Moon sold his twenty-five (25%) percent membership interest in Bridge Entertainment to Jocque and William Asher. PSOF, ¶ 40. Around this time, Moon learned that Jocque falsely represented that Moon never held a membership interest in CSCRE. PSOF, ¶ 41. In fact, after March 2017, Moon learned that in February and March 2014, that Jocque sent email communications that stated Moon had a twenty percent (20%) membership interest in CSCRE and was due $370,000 from CSCRE. PSOF, ¶¶ 42-43. The emails were sent to Brooks Holcomb, CSCRE's legal counsel, Landau, and to an individual at FirstBank.[3]

---

[3] Moon was not included in these emails and did not learn of these emails until after March 2017. PSOF, ¶ 44.

*See id.* Prior to learning about the foregoing communication, Jocque had never told Moon that he owned twenty (20%) percent membership interest in CSCRE.[4] PSOF, ¶ 45.

By the terms of Jocque's own Motion, in April 2016, Moon was still asking managers of CSCRE about the terms of his investment. *See* Defs' Partial Mot. for Summ. J. at 4:16-17. However, the email, which Defendants strongly rely upon, does not state anything about Moon inquiring about his membership interest in CSCRE. *Id.* In the email, Moon does not ask about his membership interest in CSCRE because at this time, Moon believed he never owned membership interest in CSCRE based on Jocque's telling him such two years prior. *See* PSOF, ¶¶ 34-38.

## II. LEGAL ARGUMENTS

### 1. Legal Standard

As movants, Defendants have the burden of persuasion, which means they "must persuade the court that there is no material fact for a reasonable trier of fact to find." *National Bank of Ariz. v. Thruston,* 180 P.3d 977, 980 (Ariz. App. 2008). "The moving party's burden of persuasion on the motion remains with that party; it does not shift to the non-moving party." *Id.* at 981. The burden of persuasion is "heavy" and the "court must view the evidence in a light most favorable to the non-moving party and draw all justifiable inference in its favor." *Id.* Finally, "[w]here the evidence or inferences would permit a jury to resolve a material issue in favor of either party, summary judgment is improper." *Id.*

### 2. Moon's Breach of Fiduciary Duty Claim Is Not Time-Barred

The statute of limitations for breach of fiduciary duty in Arizona is generally two years. A.R.S. § 12-542; *see CDT, Inc. v. Addison, Roberts & Ludwig, C.P.A., P.C.*, 198 Ariz. 173, 175 (App. 2000). Arizona applies the "discovery rule" to calculate limitations periods, which states that a "plaintiff's cause of action does not accrue until the plaintiff knows or, in the exercise of

---

[4] In fact, these emails contradict the CSCRE Operating Agreement that was executed on March 1, 2014. PSOF, ¶ 46.

reasonable diligence, should know the facts underlying the cause." *Gust, Rosenfeld & Henderson v. Prudential Ins. Co. of America*, 182 Ariz. 586, 588, 898 P.2d 964, 966 (1995). "The rational behind the discovery rule is that it is unjust to deprive a plaintiff of a cause of action before the claim exists." *Id.* at 589, 898 P.2d at 967.

The Arizona Court of Appeals has explained this rule as:

> A common thread seems to run through all the types of actions where courts have applied the discovery rule. The injury or the act causing the injury, or both, have been difficult for the plaintiff to detect. In most instances, in fact, the defendant has been in a far superior position to comprehend the act and the injury. And in many, the defendant had reason to believe the plaintiff remained ignorant he had been wronged. Thus, there is an underlying notion that plaintiffs should not suffer where circumstances prevent them from knowing they have been harmed. And often this is accompanied by the corollary notion that defendants should not be allowed to knowing profit from their injuree's ignorance.

*Id.* (quoting *April Enters v. KTTV*, 147 Cal.App.3d 805, 195 Cal.Rptr. 421, 436 (Ct.App.1983)).

The Arizona Supreme Court has held that "the important inquiry in applying the discovery rule is whether the plaintiff's injury or the conduct causing the injury is difficult for plaintiff to detect." *Gust*, at 590, 898 P.2d at 968; *.see also Coulter v. Grant Thornton, LLP*, 241 Ariz. 440, 444, ¶ 10, 388 P.3d 834, 838 (App. 2017) ("Accrual of these claims is governed by the discovery rule, which provides that a cause of action does not accrue until a plaintiff discovers or by the exercise of reasonable diligence should have discovered that he or she has been injured by the defendant's negligent conduct.") (internal quotations omitted).

In *Coulter*, the Superior Court found that the appellants' claims for breach of fiduciary duty were time barred because the IRS issued notices of deficiency in 2006 and 2007. *Coulter*, at 444, ¶ 11, 388 P3d at 838. The Court of Appeals determined that a new question was presented when the taxpayer continued "to consult with the accountant after the IRS's issuance of a notice of deficiency, and continues to rely on the accountant's advice in challenging the IRS's

determination in the tax court." *Id*, at 445, ¶ 12, 388 P.3d at 839. The Court of Appeals held that a "fact-based approach more appropriately addresses the relevant circumstances in any given case[.]" *Id.*, at ¶ 16. "Applying that approach here, we conclude that the superior court erred by finding that the limitations period necessarily commenced upon the IRS's issuance of a notice of deficiency. Instead, there remains a fact questions regarding whether Appellants reasonably continued to rely on Stover's reassurances, and when they discovered (or should have discovered) that the accounting advice was improper and the IRS's position would be upheld on appeal. We thus reverse the superior court's dismissal of Appellant's claims for breach of fiduciary duty . . . and we remand to allow a jury to determine the appropriate accrual date for Appellants' claims." *Id.*, at 446, ¶ 17, 388 P.3d at 840.

Here, Moon was a passive investor and not a manager or operator of the entities. PSOF, ¶ 49. Moon was not privy to the ongoing communications and strategic planning, in which Jocque was engaged with regard to CSCRE or Bridge Entertainment. PSOF, ¶ 50. Moon trusted Jocque and showed as much by continuing to be a member of the entities that Jocque acted as a manager and member in. PSOF, ¶ 20. Moon relied on Jocque's statement that he was never issued any membership interest in CSCRE and converted the remaining balance of the Loan into equity of Bridge Entertainment. PSOF, ¶¶ 36-39. After selling his interest in Bridge Entertainment, in March 2017, Moon learned additional details and information about the activities that occurred in each of these entities. PSOF, ¶ 42. Specifically, Moon learned that Jocque falsely stated that Moon only held a loan in CSCRE and that his investment was never held a membership interest. PSOF, ¶¶ 41-43. Moon did not learn that he held a membership in CSCRE until early 2017. PSOF, ¶ 41. It was not until this time that Moon discovered that Jocque owed him a fiduciary duty. Therefore, Moon's complaint filed on May 9, 2018, was within the two-year statute of limitations.

Accordingly, this Court should deny Defendants Motion for Partial Summary Judgment.

### 3. Moon's Did Not Discover His Fraud Claim Until Early 2017.

Under A.R.S. § 12-543, the statute of limitations for fraud is three years. "The statute of limitations in a fraud case begins to run when the plaintiff by reasonable diligence could have learned of the fraud, whether or not he actually learned of it." *Coronado Dev. Corp. v. Superior Court of Arizona In & For Cochise Cty.*, 139 Ariz. 350, 351 (App. 1984). The discovery rule, as discussed in *Coulter*, *supra*, applies to fraud claims as well. *Coulter*, at 446-47, ¶¶ 19-22, 388 P.3d at 840-41.

As stated, Moon was told what Jocque wanted him to be told. The Motion states that Jocque did not tell Moon that he would receive ownership interests in CSCRE. *See* Defendant's Motion, 2:22-24; 6:6-7; 6:27-7:2; 7:11-12. This is false. PSOF, ¶¶ 41-43.

This Motion is just another attempt by Jocque to control the narrative by picking and choosing which pieces of information to disclose to Moon, a passive investor. Moon was not privy to the ongoing communications and strategic planning, in which Jocque was engaged with regard to CSCRE or Bridge Entertainment. PSOF, ¶ 50. Moon trusted Jocque and showed as much by continuing to be a member of the entities that Jocque acted as a manager and member in. PSOF, ¶¶ 20, 39. Moon relied on Jocque's statement that he was never issued a membership interest in CSCRE and converted the remaining balance of the Loan into equity of Bridge Entertainment. PSOF, ¶¶ 36-39. After selling his interest in Bridge Entertainment, in March 2017, Moon learned that Jocque made materially false statements to him in October 2014, namely that Moon never was never issued a membership interest in CSCRE. PSOF, ¶ 42. Therefore, when Moon learned of the fraud, he filed this claim within three years of that date, within the statute of limitations.

Accordingly, this Court should deny Defendants Motion for Partial Summary Judgment.

### 4. Attorneys' Fees and Costs are Not Appropriate for Counts Four and Five.

Attorney's fees arise for claims out of contract. A.R.S. § 12-341.01. In *Dooley v. O'Brien*, 226 Ariz. 149, 155, ¶ 23, 244 P.3d 586, 592 (App. 2010), the Court of Appeals overturned a superior court's award of attorneys' fees because none of the surviving claims arose out of a contract. The defendants in *Dooley* were successful on a claim of breach of fiduciary duty and the Court of Appeals determined that the breach of fiduciary duty claim stemmed from the duties created by the defendants' nature as a director of a corporation to its shareholders, not from a contract. *Id.* at 153, ¶¶ 14-16, 244 P.3d at 590. When breach of fiduciary duties "are not accompanied by a specific contractual obligation, the claim does not arise out of contract." *Id.* at 154, ¶ 19, 244 P.3d at 591 (internal quotation omitted). Here, the claims for breach of fiduciary duty and fraud, do not arise out of specific contractual obligations, and therefore, are not subject to an award of attorneys' fees.

### III. CONCLUSION

For the foregoing reasons, Moon requests that this Court deny Defendants' Motion for Partial Summary Judgement.

**RESPECTFULLY SUBMITTED** this 31st day of January, 2020.

**WILENCHIK & BARTNESS, P.C.**

*/s/ Ross P. Meyer*
Dennis I. Wilenchik, Esq.
Ross P. Meyer, Esq.
Jordan C. Wolff, Esq.
The Wilenchik & Bartness Building
2810 North Third Street
Phoenix, Arizona 85004
admin@wb-law.com
*Attorneys for Plaintiff John Moon*

**ELECTRONICALLY** filed this 31st day of January, 2020 via AZTurboCourt.com.

**COPY** e-served this 31st day of January, 2020, to:

William G. Klain
**Lang & Klain, P.C.**
6730 N. Scottsdale Road, Suite 101
Scottsdale, Arizona 85253-4408
filing@lang-klain.com
*Attorneys for Defendants*

Robert T. Mills
Sean A. Woods
Mills & Woods, PLLC
5055 N. 12th Street, Suite 101
Phoenix, Arizona 85014
docket@millsandwoods.com
*Attorneys for Plaintiff D2W, LLC*

Chad Landau, for himself and for Karen Doris, LLC
1412 Copper Trace
Cleveland Heights, OH  44118
Chad.m.landau@gmail.com
*Plaintiff Pro Per*

 */s/ Ross P. Meyer*